## Baker v. Baker.

| 195 | 407 |
|---|---|
| 20 SC | [1]222 |
| 20 SC | [1]223 |
| 195 | 407 |
| 22 SC | [1]574 |
| 195 | 407 |
| f 25 SC | [1]185 |
| 195 | 407 |
| 30 SC | [1]236 |
| 195 | 407 |
| 34 SC | [3]183 |
| 195 | 407 |
| 35 SC | [1]632 |

*Divorce—Cruel and barbarous treatment—Adultery—Evidence.*

A decree in divorce will be granted to a wife on her testimony alone where such testimony makes out a clear case of cruel and barbarous treatment, and the husband although represented by counsel at the hearings, makes no denial whatever of the charges against him.

A decree in divorce should be granted to a wife where she testifies without contradiction from her husband, to repeated acts of personal violence; that her husband had a foul venereal disease; that he was constantly telling her of his own adulterous practices; that he grossly insulted her by proposing that she should have illicit intercourse with other men, and that by a long continuance of his indignities to her person making her life intolerable, he had compelled her to withdraw from his house and seek refuge with her parents.

If a husband has a venereal disease during the continuance of the marital relation and there is no explanation of it or evidence that his wife had communicated the disease to him, it must be regarded as evidence of illicit connection with other women than his wife.

MITCHELL and FELL, JJ., concur on the second ground of divorce (adultery) only.

Argued Jan. 11, 1900. Appeal, No. 251, Jan. T., 1899, by plaintiff, from decree of C. P. No. 3, Phila. Co., March T., 1897, No. 13, dismissing libel in divorce in case of Mary T. Baker v. Louis F. Baker. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Libel for divorce.

The facts appear by the opinion of the Supreme Court.

The case was referred to George Frederick Keene, as master, who reported in favor of dismissing the libel.

The court entered a decree dismissing the libel.

*Error assigned* was in dismissing the libel.

*John G. Johnson,* with him *F. F. Brightly,* for appellant.

No argument was offered or paper-book filed for appellee.

OPINION BY MR. CHIEF JUSTICE GREEN, April 23, 1900:

We are not able to agree with the master and court below in their conclusions in this case. The libellant testified to facts which have always been held sufficient to justify a divorce on the ground of cruel and barbarous treatment, and indignities to the person of the wife such as to render her condition intolerable and life burdensome. She was asked: " Q. Now Mrs. Baker kindly tell us the manner in which your husband treated you when you lived with him? A. He treated me with cruelty, struck me and several times threw me down. Q. Kindly tell us when and where this took place? A. At our home 713 North Fifth street. Q. When was that? A. Three years ago, two years ago and was also last year when we lived together. Q. Were any persons present when he struck you? A. No persons were present when he struck me. I complained to my parents about it. Q. Were these acts of cruelty of frequent occurrence? A. Several times; I was afraid to live with him. Q. What was the occasion of his acts of cruelty? A. He told me of his adulterous habits with other women. Q. What knowledge have you of any acts of adultery on his part with other women? A. He told me of a girl he associated with in our neighborhood. . . . Q. Did he ever make any improper propositions to you? A. He told me I could go out and see other men. Q. When was that proposition made to you— about how long prior to the time that you parted from him? A. Perhaps seven months; he kept these personal indignities up all the time we boarded. Q. Did he leave the house, or how did the separation take place? A. By my going back to

my parents by reason of his cruel treatment of me and of his adulterous habits. . . . Q. Did you leave him because you could no longer live with him? A. Yes, sir. Q. You could not suffer such indignities that he put upon you? A. No, sir. Q. Did you ever give him any cause for his treatment? A. No, sir. Q. Did you always treat him as a wife should a husband? A. Yes, sir. Q. Lived with him as long as you possibly could? A. Yes, sir—until it became an impossibility to live with him any longer." She also testified that he had gonorrhœa and was under treatment for it for some time, narrating the particulars of his declarations to her on that subject.

The libellant was a thoroughly competent witness and was not impeached or contradicted in any way as to any of this testimony. Her husband was represented by counsel at all the hearings and he never made the least denial of her testimony. The master disposes of all this testimony in a single sentence: "In relation to the allegation in the libel as to 'cruel and barbarous treatment,' etc., by the respondent, there is nothing but the bare, meager, unsupported testimony of the wife, save only the testimony of Mr. Triebels one of the witnesses of whom the libellant is the adopted daughter." And the master reported that he was " of opinion that the allegations in said libel as ground for divorce have not been proven," and recommends that divorce be refused and the bill dismissed.

He does not discuss the question whether the facts given in evidence were sufficient to authorize a decree of divorce but says that they were not proven. He seems to forget that they were testified to by an apparently respectable, and much injured wife, who said she had been compelled to withdraw from her husband's house in consequence of his repeated cruelties and indignities, and also that the husband who was a perfectly competent witness, and represented by counsel all through the trial made no contradiction whatever of any part of her testimony. It is quite incorrect to hold that such testimony is "bare, meager, unsupported testimony." On the contrary, it is not bare, meager, or unsupported. The fact that the wife finally left the house on account of the treatment of her husband was a very strong supporting fact to her testimony. But her testimony did not require other supporting evidence. Being entirely uncontradicted and being sufficient of itself to justify a decree,

it is not proper to flippantly dismiss it from consideration and refuse relief to the party injured. On the question whether this kind of treatment is a sufficient cause for divorce, it is only necessary to say that in our quite recent cases of Mason v. Mason, 131 Pa. 161, McMahen v. McMahen, 186 Pa. 485, and Oxley v. Oxley, 191 Pa. 474, all these matters have been thoroughly considered and reviewed, and pronounced to be ample cause for a decree of divorce. It is not necessary to discuss them; the question is too plain to require it. When it is considered that this libellant testified to repeated acts of personal violence, that her husband had a foul venereal disease, that he was constantly telling her of his own adulterous practices, that he grossly insulted her by proposing that she should have illicit intercourse with other men, and that by a long continuance of his indignities to her person, making her life intolerable, he had compelled her to withdraw from his house and seek refuge with her parents, and that he had never denied a single one of her charges, and when it is further considered that this court has declared that all of these facts are a proper and sufficient cause for a decree of divorce, it will not do to curtly say that the libellant's cause of divorce has not been proved, and to dismiss her bill. The learned court below simply approved of the master's findings without any discussion of the testimony or of the case, and in this there was serious error.

There was also proof of respondent's adulterous practices not only by his confession to his wife but by the testimony of his physician who treated him for venereal disease. As the testimony of the physician was admitted without objection it was clearly competent. He testified, " Q. What did you treat him for? A. He had a discharge that is commonly called gonorrhœal, urethritis, inflamed condition of the urethra. Q. You diagnosed the case as gonorrhœa? A. I diagnosed the case as gonorrhœa as far as I remember now; that is my impression. Q. Did you treat him after that day? A. I treated him that day, I suppose I prescribed for him. Q. Do you recollect this outside of your book entries? A. Yes, sir; I remember his coming and treating him for it, I remember the disease. . . . Q. Have you got any doubt about it? A. No, sir; I can't say that I have any doubt about it."

On the same subject Mrs. Baker testified that on the occa

sion of their going on a journey to Chicago in 1893, a conversation in reference to this matter took place. " Q. Do you remember anything being the matter with your husband at that time? A. Yes, sir. Q. Did he tell you what was the matter? A. He told me it was gonorrhœa. Q. Did you know what gonorrhœa meant? A. No, sir. . . . Q. When was it he told you this? A. When I asked him why he was using this treatment. Q. What kind of treatment did he use in Chicago? A. He was obliged to use a syringe. Q. And did he tell you what it was? A. He told me that it was rundown condition of the system."

As none of this testimony was denied by the respondent, we know of no reason why it should not be considered as verity. If he had such a disease as that during the continuance of the marital relation, it must be regarded, in the absence of explanatory proof, as evidence of the fact of illicit connection with other women than his wife, there being no proof in the case that she was affected by that disease. We are therefore of opinion that both grounds of cruel treatment and adultery are sufficiently established to justify a decree of divorce a vinculo.

The decree dismissing the libel is reversed and a decree of divorce a vinculo matrimoni is now entered in favor of the appellant with costs.

MITCHELL and FELL, JJ., concur on the second ground of divorce (adultery) only.