# Howe v. Howe.

*Divorce—Practice, C. P.—Dismissing exceptions to master's report without opinion.*

It is not good practice for the court of common pleas to dismiss exceptions to a master's report in a suit for divorce, and confirm his findings without any discussion of the evidence, of the conclusions of fact, or of his application of the law to the facts as found by him.

*Divorce—Cruel and barbarous treatment—Desertion.*

The " reasonable cause " which justifies a wife's desertion and abandonment of her husband must be such as would entitle her to a divorce, and that is defined by the statute itself to be such cruel and babarous treatment as endangers her life, or which offers such indignities to her person as to render her condition intolerable and life burdensome.

The fact that a wife finally leaves the house of her husband on account of his treatment of her is a very strong supporting fact of her testimony as to the cruel and barbarous treatment to which she claims to have been subjected.

Syllabus—Opinion of the Court.      [16 Pa. Superior Ct.

If a husband's conduct is so cruel towards his wife that she cannot live with him in safety to her health, or without peril to her life, and for such reason she leaves him and abandons his home, she does not thereby commit the crime of desertion.   In such a case she does not leave her husband or his home in consequence of any wilfulness on ner part, but is compelled by the cruelty of her husband and against her own will so to do. The desertion in such a case is upon his part and not upon hers.

On a libel for divorce by a wife for cruel and barbarous treatment, the libellant is entitled to a decree in her favor where the only inference to be drawn from the uncontradicted evidence is that the husband committed repeated acts of violence on the libellant, which continued through a number of months and resulted in threats to take her life, which produced such a dread of further brutalities that she was obliged to leave his home.

On a libel for divorce by a wife for cruel and barbarous treatment, declarations of the wife and prints of fingers on her throat exhibited six hours after they were inflicted to her mother and brother, are proper evidence as part of the res gestæ.

Argued Dec. 12, 1900.   Appeal, No. 205, Oct. T., 1900, by plaintiff, from decree of C. P. No. 1, Phila. Co., March T., 1899, No. 71, dismissing exceptions to master's report in divorce in case of Minnie A. Howe v. Everett T. Howe.   Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ.   Reversed.

Libel for divorce.

The case was referred to Webster Melcher, Esq., as master, who took testimony and filed a report in which he recommended that the libel should be dismissed.

*Error assigned* was decree dismissing exceptions to master's report.

*R. O. Moon*, for appellant, cited: Mason v. Mason, 131 Pa. 161; Oxley v. Oxley, 191 Pa. 474; Baker v. Baker, 195 Pa. 407.

No paper-book or appearance for appellee.

Opinion by Orlady J., January 22, 1901:

Minnie A. Howe filed a libel which prayed for an absolute divorce from her husband on the ground of adultery, and averred " that the libellant hath wilfully and maliciously deserted her

without any reasonable cause, for and during the term and space of two years. " The husband was served with the subpœna but he neither appeared nor offered any testimony before the master who was appointed by the court to take testimony, etc.

The master filed a report in which he recommended that the libel be dismissed and the libellant ordered to say the costs including the master's fees and stenographer's charges. The learned court below dismissed the exceptions filed to the master's report and confirmed his findings without any discussion of the evidence, of the conclusions of fact, or of his application of the law to the facts as found by him. This practice is condemned by the Supreme Court in the late cases, McMahen v. McMahen, 186 Pa. 485, and Baker v. Baker, 195 Pa. 407, Of whatever drudgery the court of original jurisdiction may relieve itself in this class of cases by appointing an examiner, neither it nor we can escape the burden of a careful consideration of the evidence in order to ascertain whether it does in very truth establish the statutory grounds for a divorce : Middleton v. Middleton, 187 Pa. 612.

Following the rule laid down in Angier v. Angier, 63 Pa. 450, Middleton v. Middleton, supra, we have carefully examined the testimony taken by the master, and we cannot agree with his findings of fact nor with his application to them of well settled legal principles. The charge of adultery was not pressed, and the testimony adduced referred to the husband's treatment of the wife which, it was claimed, was equivalent to his wilful and malicious desertion of her. The " reasonable cause " which justifies a wife's desertion and abandonment of her husband must be such as would entitle her to a divorce, and that is defined by the statute itself to be such cruel and barbarous treatment as endangers her life, or which offers such indignities to her person as to render her condition intolerable and life burdensome : Eshbach v. Eshbach, 23 Pa. 343; Grove's Appeal, 37 Pa. 443.

The master held that a divorce will not be granted upon the uncontroverted testimony of the libellant alone. In the somewhat similar case of Baker v. Baker, 195 Pa. 407, it is held as follows : " The fact that the wife finally left the house on account of the treatment of her husband was a very strong supporting fact of her testimony. But her testimony did not require other

supporting evidence. Being entirely uncontradicted and suffi-
cient of itself to justify a decree, it is not proper to flippantly
dismiss it from consideration and refuse relief to the party in-
jured." In this case the wife's testimony is abundantly cor-
roborated by her conduct subsequent to her leaving his home,
and by the unimpeached testimony of her father, mother and
brother. The master concludes that the libellant "failed to
prove that the respondent without good cause drove her away,
or compelled her to leave or remain away against her consent."
There is not an item of evidence tending in the most remote
degree to impugn the character of the libellant, and the master's
analysis of her testimony is not in accord with the ordinary
rules of interpretation. The respondent did not appear at any
stage of the proceeding, although he was given every opportu-
nity to cross-examine the witnesses called to testify against him ;
nor did he offer any evidence in denial of her statements.
Three witnesses, in addition to the libellant, support her mate-
rial statements, and the evidence taken as a whole is convincing
beyond a doubt as to the facts stated. The independent acts
are so testified to by the several witnesses that it is unreason-
able and unwarranted to doubt the truthfulness of the libellant
or of her witnesses. The libellant was twenty and the respon-
dent twenty-three years of age at the time of their clandestine
marriage, after which they lived with the family of the husband
in Scranton, Pa. The libellant testified in substance that the
husband was a man who very frequently came home intoxicated
and was very abusive in language and actions, which conduct
grew constantly worse. Several times he knocked her down and
threatened to shoot her if she went home. He locked her in a
room and struck her on other occasions prior to March, 1897, at
which time he came home beastly drunk. The wife remon-
strated with him for his conduct, when he struck her in the face
with his fist and knocked her down, swearing violently at her and
choking her so as to leave the prints of his fingers on her throat.
He had a pistol and said, " God damn you, go home ; I do not
care, and stay there. If you don't go home, I will shoot you,
anyhow." The wife remained up all night, being afraid to go
to bed, and the next day she left the home to go to her father's
in Philadelphia. She swears positively that she endured his
treatment of her as long as she could, and she was absolutely

afraid for her life when being with him, and that there was never any cause for his treatment of her except his own ungovernable temper and bad habits; that she treated him kindly and affectionately and did all that she could to make his married life happy.

On her return to her father's in March, the prints of fingers were noticeable on her throat, and were observed by her mother and brother to whom she narrated the cause. She was at that time very nervous and hysterical, owing to which condition she was taken away from home for a month. If there could have been the slightest doubt of the truthfulness of this account, it was entirely removed by the testimony of the father of the libellant, who was visited at his place of business in Philadelphia by the respondent soon after the libellant had left his home in Scranton. There the following conversation occurred: "He said to me 'What about the diamond ring and trunk and strap my wife has belonging to me.' I said, 'I don't know anything about your strap or ring; if I did I would throw it at you.' I said, 'How about this trouble with my daughter, and your conduct to her?' 'Well,' he said, 'I don't want her; she cannot live with me; she can go to hell; I do not want her.' He said, 'She never can come back to me, and I will not support her.' I said, 'What about this outrageous, barbarous manner in which you have been treating my daughter?' He said, 'That's all right; she is my wife and that is a matter between us. If she gives me back the diamond ring and the trunk and the strap, she can go to hell.'" The only reasonable inference to be drawn from the uncontradicted evidence is that the husband committed repeated acts of violence on his wife, which continued through a number of months and resulted in threats to take her life, which produced such a dread of further brutalities that the wife was obliged to leave his home. The courts have frequently held that such acts are a proper and sufficient cause for a decree of divorce. Her declarations and the prints of fingers on her throat exhibited six hours after they were inflicted, to the persons to whom she would most naturally exhibit them, were proper evidence as part of the res gestæ: Cattison *v.* Cattison, 22 Pa. 275; Bealor *v.* Hahn, 117 Pa. 169.

To entitle a wife to divorce for cruel and barbarous treatment, it is well settled that there must be actual personal vio-

lence, or a reasonable apprehension of it, or such a course of treatment as endangers life and health and renders cohabitation unsafe : May v. May, 62 Pa. 206 ; Gordon v. Gordon, 48 Pa. 226 ; Butler v. Butler, 1 Parson's Select Equity Cases, 329 ; Detrick's Appeal, 117 Pa. 452.

Desertion under the statute is the wilful abandonment without cause of one party by the other, and against the will of the party abandoned, for the period of two years. If the husband's conduct is so cruel towards his wife that she cannot live with him in safety to her health or without peril to her life, and for such reason she leaves him and abandons his home, she does not thereby commit the crime of desertion. In such a case she does not leave her husband or his home in consequence of any wilfulness on her part, but is compelled by the cruelty of the husband and against her own will, so to do. The desertion in such a case is upon his part, and not upon hers. He as completely commits the crime of desertion when by his cruel conduct he compels her for safety to leave him and his home as when he wilfully and without cause abandons her : Warner v. Warner, 54 Mich. 492 ; James v. James, 58 N. H. 266 ; Weigand v. Weigand, 41 N. J. Eq. 202 ; 3 Cent. Repr. 362 ; Shrock v. Shrock, 4 Bush. (Ky.) 682 ; Morris v. Morris, 20 Ala. 168 ; Waltermire v. Waltermire, 110 N. Y. 183 ; Johnson v. Johnson, 14 West. Repr. (Ill.) 407. By the common law if the husband turns his wife out of doors or by cruel treatment or immoral conduct compels her to leave him, he sends her away with his credit, and is answerable to any person who may provide her with suitable support : Breinig v. Meitzler, 23 Pa. 156 ; Weigand v. Weigand, supra ; Hultz v. Gibbs, 66 Pa. 360.

In cases like the present, when the wife is obliged by the cruelty or violence of her husband to leave him for safety and to avoid personal injury, her compulsory flight amounts to desertion by him. The burden of proof is upon her to show that her abandonment was not voluntary but that she was compelled to leave by his treatment or command : Starkey v. Starkey, 21 N. J. Eq. 135. In this case the evidence clearly establishes the fact that the wife left the home of the respondent for the double reason that he commanded it and that she could not stay with safety. As in Baker v. Baker, supra, " None of the testimony taken was denied, and we know of no reason why it should not

be considered as verity." We are of opinion that the wife was fully justified in leaving the home of her husband on account of his command to do so and his brutalities toward her, and that they amounted to a wilful and malicious desertion by him which has continued for the statutory time.

The decree dismissing the libel is reversed, and a decree of divorce a vinculo matrimonii with costs is now entered in favor of the appellant.