## Faunce, Appellant, v. Faunce.

*Divorce—Desertion—Evidence.*

A divorce should be granted to a husband where it appears from his own evidence that sixteen years before filing the libel his wife voluntarily withdrew from his home, that she subsequently refused his request to return, and thereafter went to reside in a distant state, and that he treated her kindly, and provided all that she needed.

Where a wife who has deserted her husband and gone to a distant state is served with a subpœna in divorce while on a visit to this state, and has due notice of the hearing before the master, which, however, she does not attend, either personally or by counsel, the testimony taken in support of the libel is to be taken as verity, and a letter written by the respondent to the master is not entitled to any consideration as evidence in her favor.

A proceeding for divorce is subjected in the appellate courts to scrutiny from beginning to end. Particularly is this directed to the testimony in order that the merit or demerit of the application may on the whole be determined.

Argued Dec. 14, 1901. Appeal, No. 255, Oct. T., 1901, by plaintiff, from decree of C. P. No. 3, Phila. Co., dismissing libel in divorce in case of Daniel Faunce v. Lizzie Faunce. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Libel for divorce.

The master, Richard S. Hunter, Esq., reported as follows:

The libellant is forty-two years of age; the respondent is forty years of age. The libellant lives at 4231 Salem street, Frankford, Philadelphia; the respondent lives in Chicago. They were married on March 19, 1879, in St. Joachim's Church, by the ceremony of the Catholic church. They had one child, a boy, who died at the age of four years; they had no other children. The maiden name of respondent was Callahan.

The libellant and respondent lived together after their marriage at various places in Philadelphia, as set forth in the evidence, always keeping house, until they went to Ruan street, west of Main street, now Frankford avenue, as boarders. While they were boarding here, on February 18, 1884, the respondent stayed out all night, and next day wrote to the libellant that she had met some friends on Front street who had given her some wine, and that she knew nothing until the next morning. The respondent asked the libellant in this letter to meet her in the street, as she could not face the people in the boarding house. The libellant was on the street at the time fixed, but the respondent was not there; the next day she wrote him that as he had not met her, she would go her own way, and he could do the best he could for himself. The next time that he saw her was four weeks afterwards, when he met her at the Fifth and Sixth street depot and asked her if she would not come back and do right. She said no, she would not do dishes for any man living. The next time the two met was in July, 1898; the respondent had gone to Chicago and returned to stay for one week with her sister in Frankford. The respondent came to the engine house where the libellant worked, told him she had been living in Chicago, and had returned only for a few days. The libellant has never seen or heard from the respondent since until he filed the libel. The libellant also testified that the respondent had been in the habit, two or three months prior to her leaving him, of staying out late at night, and had once on a previous occasion, stayed out all night against his remonstrances; and that when he first met her after she left him, he asked her whether she was not living at a certain house at the corner of Marshall and Diamond streets, which was a house of ill-fame; she denied this, but confessed that she went there occasionally.

The libellant testified that he always treated the respondent well, gave her all the money he made while they were at housekeeping, and when they boarded, paid her board and gave her what she wanted. There was no cohabitation between the libellant and respondent after February, 1884.

Susanna V. Dawson, a witness, the aunt of the libellant, corroborated his testimony as to the places where they lived, and the separation in February, 1884. She testified that the libel-

lant always treated the respondent well and supported her in comfort and that he was an industrious, sober man. That the respondent was away constantly and her child was with the witness.

The respondent was served with notice of the first meeting at her house in Chicago by registered letter, addressed to "Mrs. Lizzie Faunce or Mrs. Lizzie Seymour." She gave receipt for the letter as "Lizzie Faunce, now Lizzie Seymour." She then wrote to the master a letter, which, together with his reply thereto, the master annexes to this report. The libellant absolutely denies the material statements in the letter.

The master reports that the divorce as prayed for should be granted.

The court did not follow the master's recommendation, but entered a decree dismissing the libel on the ground that the evidence was not sufficient.

*Error assigned* was the decree dismissing the libel.

*Joseph R. Embery*, for appellant.

No book filed or appearance entered for appellee.

OPINION BY ORLADY, J., April 21, 1902:

The parties to this action for divorce were legally married in this state in 1879 and resided in Philadelphia as husband and wife until 1884, when the wife removed to Chicago, where she has lived since that time. She was served with the subpœna while on a visit to this state, and had due notice of the hearing before the master. The case is free from any suggestion of collusion and the fact of wilful and malicious desertion, without reasonable cause for eighteen years is established by clear and convincing testimony, which is not contradicted by any competent evidence. The letter written by the respondent to the master is not entitled to any consideration as evidence in her favor, and the testimony taken in support of the libel is to be taken as verity under the facts of this case: Baker v. Baker, 195 Pa. 407.

A proceeding for divorce is subjected in the appellate courts to scrutiny from beginning to end. Particularly is this di-

rected to the testimony in order that the merit or demerit of the application may on the whole be determined: Hull ·v. Hull, 14 Pa. Superior Ct. 520.

The evidence properly before the court is ample and sufficient to entitle the libellant to a divorce under authority of Baker v. Baker, supra, Smith v. Smith, 15 Pa. Superior Ct. 366, Howe v. Howe, 16 Pa. Superior Ct. 193, and the cases therein cited.

The decree dismissing the libel is reversed and a divorce a vinculo matrimonii with costs is now entered in favor of the applicant.