## Reed, Appellant, *v.* Reed.

*Divorce—Appeals—Review by appellate court—Domicile.*

On an appeal from a decree in divorce it is incumbent upon the Superior Court, except where there has been an issue and a jury trial, to review the testimony, and adjudge whether it sustained the complaint of the appellant. The rule generally applicable to proceedings before a master or an auditor, that a finding of fact will not be disturbed, except for manifest error does not apply to such a case.

Where a libelant in a divorce suit established legal grounds for a divorce, her libel should not be dismissed on the ground that her bona fide residence had not been established, where it appears that she had resided for one year within the state, testifies that she intended to make it her permanent residence, and shows to the court that she had left her former domicile because of her domestic troubles, had settled in a Pennsylvania city because she had there some sympathetic relations, and had there secured employment as a nurse and companion, and this proof is supported by the master in specially certifying that he was satisfied by personal inquiry that the residence of the libelant in Pennsylvania was correct and bona fide.

Argued Oct. 5, 1905. Appeal, No. 58, Oct. T., 1905, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1904, No. 303, dismissing libel in divorce in case of Agnes Blair Reed v. George Elkins Reed. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Libel in divorce.

The facts are stated in the opinion of SULZBERGER, P. J., which was as follows:

The libelant and respondent, both citizens of New York, were married in Brooklyn, N. Y., on February 22, 1900, and removed thence to South Amboy, N. J., where they lived about six months. Afterwards they lived together at Newburgh, New York, for over a year, and then at Brooklyn, N. Y., until November 17, 1902, when the libelant left her husband because of his ill-treatment of her.

She came to Philadelphia in December, 1902. Her testimony is that when she left her husband she took the baby to her husband's father at Baltimore, who had agreed to support

the child, and, to use her own words, "immediately came to Philadelphia as a nurse and companion to a Mrs. Dodge for seven months; we were at Delaware Water Gap for a while and I left Mrs. Dodge and came back to Philadelphia and I was nurse and companion for a Mrs. Murray, 100 West Coulter street, Germantown, for eight months until she died. I was also companion to a Mrs. Nassau, on North Broad street, Philadelphia. Since then I have no employment. I have not felt very well and I have been doing nothing but living upon my mother's check which she had been sending me each week."

Her reasons for coming here she stated to be "taking a position here and because I didn't care to stay in Brooklyn, N. Y., where I was known and lived well before I was married, and I came here because I had friends here and I wanted a position and did not care to work where I was known by everybody. I have some cousins here and an aunt. I intend to make this my home. I have made this my permanent residence."

The libelant's mother testified that her daughter wanted to get away from Brooklyn on account of friends and acquaintances, and she had relatives here in Germantown.

The master found that the libelant has resided in Philadelphia since December of 1902, which is in effect a finding that she had resided here at least one whole year previous to the filing of the libel.

In Lyon v. Lyon, 61 Legal Int. 410, 13 Pa. Dist. Rep. 623, we held that in order to obtain a divorce the libelant must have had a bona fide residence here; that is, a residence with domiciliary intention.

The facts in the present case are strikingly similar to those in Lyon v. Lyon. Here, as there, both parties were strangers to this commonwealth, before and at the time of their marriage, and here, as there, the marital offense was committed in another state while both parties were citizens of that state.

Moreover, the parties were also citizens of the state of New York, whose law allows absolute divorce on the one ground of adultery only, and grants merely a separation for the cause alleged on this libel.

When persons desire an absolute divorce under such circumstances it is only natural to expect them to turn to a state where the laws are more favorable to their wishes than is the

law of their own domicile, and it is quite conceivable that one of the parties would be willing to devote a year or more of time to the accomplishment of a cherished purpose otherwise unattainable. This state of affairs must continue while two adjoining commonwealths have divorce laws of opposite character, the one of extreme stringency, the other of wide liberality.

While it is our duty to give to our own citizens the benefit of our liberal divorce laws, the extension of their action to citizens of other states whose laws are dissimilar, would be a lack of comity toward our sister states, and hence we must be reasonably sure that the party seeking relief is really and in good faith a resident within this state, of such degree as to entitle her to the protection of our divorce law.

The evidence in this case leaves us unsatisfied of the libelant's right. Her mother lives in Brooklyn; her child in Baltimore. The motive for coming to Philadelphia, in preference to another place, is alleged to be the residence of an aunt and cousins here, while she gives as her motive for leaving Brooklyn the desire not to be working under the observation of friends who had known her when in better circumstances.

The motive seems weak. Any young woman without property or business interests can readily go from one town or state to another, and the mere fact that she had a situation from time to time as a nurse and companion for a sick person, is but slight evidence even of actual residence. It is quite as consistent with residence in an adjoining state.

Her mere declaration of the state of her mind regarding her intention to settle here permanently, without confirmatory evidence satisfactory to the court, is, as we held in Lyon v. Lyon, not conclusive. No witness living in Philadelphia was called to show any of the libelant's movements, acts, or relations with other parties since December, 1902. Whether she visited anyone or received visits, whether she made acquaintance with anybody or acquired interests of any kind here, does not appear. Coming here in December, 1902, she may, for aught that appears in the evidence, be as mere a stranger to-day as she was on the day of her arrival.

When we remember that the libelant and her husband parted with bad feeling in November, 1902; that she went to Philadelphia and he to Baltimore; that on May 6, 1904, the libel

232          REED, Appellant, *v*. REED.

Statement of Facts—Opinion of the Court. [30 Pa. Superior Ct.
was filed and the subpœna issued; and that on May 12, 1904, the sheriff served the subpœna personally on the respondent at the southwest corner of Broad and Chestnut streets, in the city of Philadelphia, we have here the circumstances which, as we said in Lyon v. Lyon, " cause us to scan the evidence closely in order to see whether the grounds of divorce, as set forth in the libel, are fully made out by the evidence."

It may not be without significance, in this connection, that in the libel sworn to by the libelant on May 5, 1904, she averred that the respondent had during " their " residence at No. 1,742 Green street, in the city of Philadelphia, and also previous to such time, committed the marital offense complained of. In point of fact, as the evidence shows, the respondent has never lived at 1,742 Green street, nor anywhere else in the city of Philadelphia, either with the libelant or separate from her.

We do not think that the bona fide residence of the libelant, within the meaning of our divorce law, has been established.

The libel is dismissed at the costs of the libelant.

*Error assigned* was decree dismissing the libel.

*Arthur G. Dickson*, with him *Samuel J. Houston* and *James McMullan*, for appellant.—The libelant's bona fide residence was established: Bigger v. Bigger, 28 Pa. C. C. Rep. 448; Com. v. Ainsworth, 6 Pa. Dist. Rep. 707; Shepard v. Shepard, 18 Pa. Superior Ct. 467; Hull v. Hull, 8 Pa. Dist. Rep. 420; Raymond v. Raymond, 14 Pa. Dist. Rep. 309; Totten v. Totten, 12 Pa. Dist. Rep. 221.

No appearance nor paper-book for appellee.

OPINION BY ORLADY, J., March 12, 1906:

It was held in Middleton v. Middleton, 187 Pa. 612, that in cases like the present one it is incumbent on the Supreme Court, and now on this court, except where there has been an issue and a jury trial, to review the testimony and adjudge whether it sustained the complaint of the libelant, and, that the rule generally applicable to proceedings before the master or an auditor, that a finding of fact will not be disturbed ex-

cept for manifest error, is not applicable. In every case in which the appeal is from a decree not based on the findings of a jury from testimony produced and the finding had in open court, under the instructions of the judge as to the law, the court is to take up, analyze and review the testimony. Therefore, of whatever drudgery the court of original jurisdiction may relieve itself in this class of cases by the appointment of an examiner, neither it nor we can escape the burden of a careful consideration of the evidence to ascertain if it does in very truth establish the statutory grounds of divorce.

The parties to this action were married February 22, 1900, in Brooklyn, N. Y., at which time both were domiciled in that state. The husband was a life insurance agent, and evidently from business engagements or other reasons he did not remain at one place any definite period. They first went to live at South Amboy, N. J., where they remained about six months, then to Newburgh, N. Y., for about a year, then to Brooklyn, until November 17, 1902, when the libelant left her husband because of his ill treatment. A child was born December 7, 1901, which the mother took to Baltimore, Md., where the child was received by the father of the respondent, and has been since then kept and maintained. The wife came to Philadelphia in December, 1902, and on May 6, 1904, filed the libel in divorce on which this action is founded. The subpoena issuing thereon was served personally on the respondent on May 12, 1904, in Philadelphia. On July 20 a master was appointed, who caused a notice to be served on the respondent in Baltimore, Md., reciting the causes for divorce as set out in the libel, and that by reason of his default in not filing an answer the case had been referred to the master, who would take testimony in the case in his office in Philadelphia on October 12, 1904; the respondent did not appear in court, nor before the master and, pursuant to the notice, the testimony of the libelant, with that of the other witnesses, was taken. The master participated in the investigation, filed his report with all the testimony and recommended that the prayer of the libelant be granted, especially certifying that he was satisfied by personal inquiry that the residence of the libelant in Philadelphia was correct and bona fide, and that she had resided in the county since December, 1902. The learned court below

dismissed the libel for the sole reason that the bona fide residence of the libelant, within the meaning of our divorce laws, had not been established.

An examination of the testimony, which is before this court in the same manner that it was before the court below, discloses a persistent refusal on the part of the husband to furnish food and clothing since their marriage, and necessary medical attendance during the wife's pregnancy and subsequent illness ; he made a number of personal assaults upon his wife and accompanied them with abusive and vulgar epithets, showing such a depraved course of conduct as justified her in leaving him to avoid further violence and risk of life. . She was not obliged to remain in the state of New York. Being thus suddenly cast on the world and obliged to earn her own living, it was not unreasonable that she should move from the community where she had friends and acquaintances, who knew of the domestic troubles and of her former life under more comfortable conditions, to seek a new environment. She selected Philadelphia, because she had there some sympathetic relations, to secure employment as a nurse and companion, and fixed upon that city as her future domicile. She testified : " I intend to make this my home. I have made this my permanent residence." This. positive declaration, accompanied with her residence there since December, 1902, brings her clearly within the statutory requirements so as to give the court jurisdiction of her cause and make a decree in her favor if the evidence is believed, and is sufficient under our decisions.

Some criticism is made by the court below of the lack of proof as to her daily life, business relations to the people, and acquaintances since coming to Philadelphia. When the evidence submitted is competent, pertinent, positive and uncontradicted, it is but just that it should be taken as establishing the facts in regard to which the testimony is directed. If it is deemed uncertain in degree, the case could be referred back to the master for a further examination along the lines suggested as inadequate.

The special difficulty in such a case is to determine the bona fides of her intention to remain a citizen. Her mere residence, as shown by physical presence, does not throw much light on the subject, and whether she engaged in business, acted as

nurse or companion or was not engaged in any definite occupation, were not controlling facts.   Her mode of living, whether at rent, at lodgings, or at the residence of employers or friends, was not material if her domiciliary intention conjoined with residence is made out.   Ordinarily, there is no fixed period of time necessary to establish a domicile.   In divorce proceedings in this state, from 1815 to 1903, the statutes all require as evidence of good intention that there should be a continuous residence within the state for a period of one whole year previous to the filing of the petition for libel.

This is a legislative prerequisite, and when it is definitely determined by competent proof it is accepted by our courts as a compliance with our laws.   In the case of a man the conditions accompanying his residence are more easily and certainly determined.   Exercising the right of suffrage is held to be conclusive, in many states, of a domiciliary intent : Shelton v. Tiffin, 47 U. S. 163.   While holding office ; engaging in business of a permanent character; the purchase of real estate with declarations of intention are regarded as the highest evidence that can be submitted on the subject.   But proof of the good faith of such intention is not limited to such a course of life.   An invalid wife, without means, fleeing from the neglect and assaults of a brutish husband to avoid physical injury and obliged to earn her own living, could not be expected to furnish proof of so high a degree.   However, she is not thereby precluded from the benefits of our divorce laws if she can furnish proof which is a reasonable equivalent.   Text-writers and judges regard the question of domicile of a very complex character, depending almost wholly upon the personal intent of the party, so that precedents with their necessary varying facts are but of slight assistance in its solution.

The intention to abandon a former domicile must concur with the intention to acquire a new one : Hindman's Appeal, 85 Pa. 466.   Domicile depends upon no one fact, it may be defined to be a residence at a particular place accompained with positive or presumptive proof of continuing it an unlimited time : Guier v. O'Daniel, 1 Binney, 349.   If the intention of permanently residing in a particular place exists, a residence in pursuance of that intention, however short, will establish a domicile : Price v. Price, 156 Pa. 617.

Our laws recognize the right of a wife to establish a domicile separate from that of her husband, when his conduct entitles her to have the marriage dissolved, and this without a judicial determination of the question. It is the only door open for her escape. If she continues to cohabit with him, such conduct is liable to be treated as a condonation of his misconduct and bar her claim to the remedy : 1 Bishop on Marriage and Divorce, sec. 123 ; Barber v. Barber, 62 U. S. 582; Colvin v. Reed, 55 Pa. 375 ; Harteau v. Harteau, 31 Mass. 181.

In Lyon v. Lyon, 13 Pa. Dist. Reps. 623, the same learned judge who made the decree in this case reviewed the question of divorce in this state, in an opinion which is a valuable contribution to the law on the subject. His conclusion in this case is based upon the reasoning given in that one. If the testimony of the libelant and her witnesses is to be believed, and there is nothing in this record to justify our discrediting it in any way, the proof furnished by her is sufficient to entitle her to a decree in her favor. She is corroborated, so far as he could do so, by the master, who was satisfied from personal inquiry that her residence in Philadelphia was in good faith, which would seem to supply, what in the mind of the learned judge below, appeared to be lacking in the way of support of her testimony as to her acquaintances and conduct since coming to the city. Under authority of Baker v. Baker, 195 Pa. 407, her testimony did not require other supporting evidence. Coming from a competent witness, and being entirely uncontradicted it was in itself sufficient to justify a decree. The record in that case shows that the respondent was personally served with a subpœna, a rule for a bill of particulars was entered and subsequently withdrawn, and no answer was filed to the libel. His attorney appeared before the master and cross-examined the witnesses examined in behalf of his wife.

The refusal of the respondent in this case to appear in court or before the master is consistent with his conduct as set out against him in the libel and would not serve as an argument against the libelant unless there is something to suggest collusion between the parties, and there is nothing before us to raise a suspicion of such a relation.

Her testimony is direct, positive and uncontradicted and to

raise any question affecting her credibility we must go outside of the record.   She is corroborated by her mother and two other witnesses, and if a longer residence than one year should be required in such cases it is for the legislature to so declare and not the courts.   Her declarations, acts and conduct have been consistent throughout and we are of the opinion that the wife has made out her case under our statutes and decisions. The decree dismissing the libel is reversed and a decree of divorce a vinculo matrimonii with costs is now entered in favor of the libelant.