Opinion by
Beaver, J.,
After finding that the libelant and respondent resided in Philadelphia from 1870, that they are now citizens of this commonwealth and were so for a period of more than one year prior to the filing of the libel in this case, the master finds: “That, on December 9, 1901, after a quarrel over a boarder, the respondent left the libelant. Five moving wagons drew up to the door of the libelant’s residence, 2025 Montgomery avenue, and took all the furniture away, except the contents of one room. The respondent moved to Twenty-fifth and Nicholas streets, where she rented a house and took in boarders. Libel-ant further testified that the going away of his wife was against his consent, that he tried to stop her and that she ordered the *631 wagons herself. Libelant further stated that he had given no cause for his wife’s departure and that he was always kind and good to her. • A Mrs. Sarah Thompson corroborated the libel-ant’s testimony about the respondent leaving and also said that the libelant treated his wife 'fine’ and was 'very good to his children.’ ” A careful examination of all the testimony in the case shows that these findings are fully justified.
“The mere fact that parties are living apart does not raise a presumption of desertion. Desertion begins with the intent to desert, and to make such desertion permanent. Willful desertion signifies intentional desertion. It does not imply malice in fact:” Browne on Divorce, 144.
In McClurg’s Appeal, 66 Pa. 366, it is said: “The desertion and its continuance are clearly proved and, so far as we can discover, was without sufficient legal reasonable cause for it; while on the contrary he appears to have been actuated by perverse feelings, leaving the conclusion that his absence was willful, and, in legal acceptation, malicious.”
It here appears that it is not necessary to prove actual malice; indeed the cases are rare in which this can be done. If the desertion is intentional, it is willful. If willful, malicious. This is the current of all our authorities.
Van Dyke v. Van Dyke, 135 Pa. 459: “A desertion, which is without consent and without sufficient legal cause, is presumed to be willful and malicious; and, if persisted in for two years or more, it will entitle the injured party to a decree of divorce.”
Whelan v. Whelan, 183 Pa. 293: “A desertion without consent and without sufficient legal cause is presumed to be willful and malicious, and when a wife so leaves her husband, and for a period of two years refuses to return, she is guilty of such desertion as will entitle him to a divorce.”
Middleton v. Middleton, 187 Pa. 612: “Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, willfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when without cause or consent either party withdraws from the residence of the other.”
There is no departure, and no intention to depart, from the *632 settled principles of those well-considered eases in the later ones in this court, as the master seems to think.
“ The finding of the master, based upon competent evidence, is that the wife deserted the husband in this case, without legal cause, against his consent and in spite of his efforts to prevent it. She has persisted in such desertion from that day to the day of the hearing, a period of more than five years.
“ The husband being a competent witness, his testimony is to be received and is sufficient to establish the facts contained therein when not in themselves contradictory or contradicted by other testimony:” Baker v. Baker, 195 Pa. 407; Faunce v. Faunce, 20 Pa. Superior Ct. 220.
In this case, however, the husband's testimony is supported by that of a disinterested witness who was a near neighbor. The grounds upon which the master apparently assumes to conjure up doubts in his own mind are stated by him as follows: “From the outset your master has been disposed to view the testimony in this case with great caution. The libelant is not unknown to this court, having filed a libel in divorce on a previous occasion on practically the same grounds. The case is of March Term, 1905, 0. P., No. 5, No. 225, and, on recommendation of William B. Davis, Esq., master, the libel was dismissed and the prayer thereof refused.” The grounds upon which the previous libel was dismissed are not stated and, inasmuch as the present case was heard in May, 1907, it would appear as though sufficient time had elapsed to entitle the libelant to a divorce by the continued desertion of the wife, if the original desertion had been of the character clearly shown by the facts, as'developed in the testimony. Even if the fact stated by the master, therefore, is true, it is not of itself sufficient to controvert the clear, explicit and unequivocal testimony in the case. It is to be remarked further that the alleged facts upon which the master based his suspicion and “disposed” him “to view the testimony in this case with great caution” were not in evidence, and how he could reach a disposition from the outset to view the case with caution, upon a fact not in evidence and entirely outside of the case, is a mystery to us.
It was said in Olson v. Olson, 27 Pa. Superior Ct. 128: “Un *633 contradicted testimony máy not be rejected capriciously in a divorce case any more than in other cases: Shoemaker v. Shoemaker, 25 Pa. Superior Ct. 183. But the courts are not bound to accept as absolute verity the testimony of a libelant that the libelee willfully and maliciously deserted him, such testimony being given in answer to leading questions- and without being subjected to the test of cross-examination, where, in addition to its inherent weakness or improbability, a natural inference may be drawn from his conduct that is wholly inconsistent with it.” In this case the respondent was represented by counsel, although she presented no testimony. There was, therefore, opportunity for cross-examination and, so far as we can judge from an examination of the testimony of the libelant and the witness who corroborated him, there is nothing in the testimony which is inherently weak or improbable, nor is there any natural inference to be drawn from his conduct which is wholly inconsistent with the facts, as testified to by him.
The master further says in his report: "Analysis of the testimony adduced shows that the respondent left after a quarrel with the libelant over a boarder. The merits of the matrimonial controversy are not gone into, and it is not beyond the bounds of possibility, nor even probability, that the wife was right, and was justified in leaving when and how she did. The presumption of legal willfulness and malice does not of necessity attend her act in this case. The libelant, too, seems to have viewed the departure of the respondent with a passive forbearance.”
This finding is, in our opinion, entirely unjustified by the facts. In justification of it, the master quotes some of the testimony - of the libelant, stopping at the point where, if he had continued his question, his suspicions and inferences would have been fully rebutted, if rebuttal were needed or required, by the testimony. At the point at which the master ceases to quote the testimony, this is stated:
“Q. Did you quarrel? A. Yes,- the quarrel was over a boarder. I objected to him being with us, and this is what caused the trouble. She would not get rid of .the boarder when *634 I requested her to do it, but said she would go herself before she would tell him to go. Then she moved away.on December 9, with the boarder, taking all the furniture with her, except the contents of one little room. Q. Where did she go? A. She rented a house at Twenty-fifth and Nicholas streets and took in boarders. Q. Did she go with your consent? A. No, I tried my best to stop her, but she would not listen to me. Q. Did you give her any cause to leave? A. No, only my objections to the boarder,” etc'. It is not pretended that the objection of the husband to the boarder was any justification whatever for the desertion by the wife, and how the master could construe the husband’s conduct as “passive forbearance,” under the circumstances, we cannot understand.
The report closes with a recommendation that the libel should be dismissed.
Exceptions were filed to the master’s report which were dismissed by the court below and a decree made: “And now, October 23, 1907, the master’s report in this case having been filed, recommending a dismissal of the libel, and the libelant’s exceptions to said report having been dismissed, it is ordered and decreed that the libel in this case be dismissed.”
No opinion is filed and nothing to show that the testimony, upon which the master’s recommendation was based, was examined.
This unsatisfactory manner of disposing of an application for divorce has been commented upon so often that we forbear to emphasize what we regard as a very serious omission. If it affirmatively appeared that, upon a careful examination of the testimony, the recommendation of the master had been adopted by the court, _ because of the unsatisfactory character of the testimony, we would be disposed to give the conclusion reached by the court very careful consideration, but, as has been stated in Edgar v. Edgar, 23 Pa. Superior Ct. 220, and Reed v. Reed, 30 Pa. Superior Ct. 229, the rule in regard to the conclusive character of a report of an auditor and the confirmation thereof by the court does not prevail in divorce cases. In the latter ease, our Brother Orlady in his opinion, says: “It was held in Middleton v. Middleton, 187 Pa. 612, that in cases like the *635 present one it is incumbent on the Supreme Court, and now on this court, except where there has been an issue and a jury trial, to review the testimony and adjudge whether it sustained the complaint of the libelant, and that the rule generally applicable tó proceedings before the master or an auditor, that a finding of fact will not be disturbed except for manifest error, is not applicable. In every case in which the appeal is from a decree not based on the findings of a jury from testimony produced and the finding had in open court, under the instructions of the judge as to the law, the court is to take up, analyze and review the testimony. Therefore, of whatever drudgery the court of original jurisdiction may relieve itself in this class of cases by the appointment of an examiner, neither it nor we can escape the burden of a careful consideration of the evidence to ascertain if it does in very truth establish the statutory grounds of divorce.”
Satisfied, from our examination of the evidence, that the uncontradicted testimony of the libelant, supported by that of a disinterested witness, clearly establishes the statutory grounds upon which a divorce for desertion is allowed, we are compelled to reach a conclusion differing from that of the master and the court below.
The decree, dismissing the libel, is reversed and a decree of divorce a vinculo matrimonii, with costs, is now entered in favor of the libelant.