## Spear v. Spear.

*Divorce—Matrimonial residence—Establishment of separate residence by wife during marriage—Bona fide residence in jurisdiction.*

1. During the continuance of the marriage relation, the residence of the wife is that of the husband, and she cannot establish a separate residence.

2. Libellant and respondent established a matrimonial domicile at Wallingford, Pa. Libellant, the wife, with respondent's consent, thereafter, in 1917, leased an apartment in New York in her own name; this apartment was subsequently occupied by her mother, with whom she spent most of her time, although returning from time to time to her husband's home. On or about Aug. 6, 1919, on going to Wallingford, she was convinced of her husband's adultery; she at once went to the apartment in New York, remaining with her mother until about the end of August. She then took rooms in a hotel in Philadelphia, where she lived until the filing of the libel, although making frequent visits to her mother: *Held*, she was a resident of Pennsylvania, and the Court of Common Pleas of Philadelphia County had jurisdiction.

Exceptions to master's report. C. P. No. 2, Phila. Co., Sept. T., 1919, No. 183.

*Cornelius Haggarty, Jr.*, for libellant.

*Henry J. Scott, John R. K. Scott* and *Pierce Archer*, for respondent.

ROGERS, J., June 5, 1922.—This is an action in divorce *a mensa et thoro*, brought by the libellant, Helen M. Spear, against the respondent, James Spear, Jr., on the charge of adultery. The libel was filed on Aug. 14, 1919, in Court of Common Pleas No. 2. On May 5, 1920, James Spear, Jr., filed a libel in divorce *a vinculo matrimonii* against Helen M. Spear, in Court of Common Pleas No. 4, alleging adultery on her part. On May 25, 1920, Helen M. Spear took a rule to show cause why the case in No. 4 Court should not be transferred to Common Pleas No. 2, of September Term, 1919, No. 183, and tried there as a cross-bill. On June 7, 1920, this rule was made absolute. On June 8, 1920, William C. Wilson, Esq., was appointed master in the case of the wife against the husband, and he was also appointed master in the cross-suit of the husband against the wife on Oct. 8, 1920.

The master held numerous meetings, and considerable testimony was taken. On Feb. 20, 1922, he filed separate reports recommending that both libels be dismissed, the wife's because of lack of jurisdiction, and the husband's for want of sufficient proof of his allegations.

Exceptions to the master's reports were filed by counsel for both parties.

In the case of Helen M. Spear *v.* James Spear, Jr., the master decided that the wife's alleged residence here was not *bona fide*; that she kept a room at the Windemere Hotel, 224 South Broad Street, Philadelphia, Pa., merely for the purpose of securing a divorce, and that her real residence was in New York City. He, therefore, decided that it was unnecessary to pass upon the question of adultery against the husband, as this court had no jurisdiction.

The testimony of the libellant is that she was married to the respondent on Nov. 17, 1915, in New York City; that she lived in New York at the time, and had lived previously in various parts of the United States. She was an actress, and her profession compelled her to move about the country. Immediately after the marriage she moved to Wallingford, Pa., with her husband, where she lived with him until on or about Aug. 6, 1919. She also testified that in the year 1917, with the knowledge of her husband, and without objection from him, she leased an apartment in her own name and had a telephone installed in her name in an apartment in New York City; that this was done for her mother, who was at that time in the middle west, and that her mother, coming on to New York shortly thereafter, occupied the apartment as her own and

still occupies it. No testimony by the husband was offered in contradiction of these facts. She also testified that on a return from her mother's apartment in New York to Wallingford, Pa., on or about Aug. 6, 1919, she found that some of her clothes had been worn by another person, that they had been taken down from closets in the third floor; that her hats lying around had been worn, and that there were black hair combings in her hair brushes, and dark hair-pins on her dresser of a color which she did not use. She immediately left the house, went to New York for a short time, and then, later in August, 1919, went to the Windemere Hotel in Philadelphia, and has since resided there. That she has since made a number of visits to New York to see her mother, where she had no room of her own, but occupied a room in the apartment on those occasions which her sisters and various members of the family used when visiting her mother.

The husband admitted that between July 26, 1919, and Aug. 6, 1919, two women had come to his country home in Wallingford, Pa., and had remained there for several days and nights, there being present only himself and another man, a naval officer, whose name the husband would not disclose, and the servants of the household. On Sunday, other naval officers visited Mr. Spear's home, and there was evidence as to the drinking of intoxicating liquors all during this time, though no proof of any undue intoxication. The husband specifically denies that any misconduct occurred at this time on his part, or at any other time. On the other hand, there was testimony by Lenora Williams, a maid in the Spear household, who told of hearing Mr. Spear talking to one of the women, Alice, in his bed-room, and, also, the maid saw Mr. Spear go into the bath-room when this woman was in there. Then she said that the women dressed very scantily in one-piece suits and walked on the lawn without stockings. She also found articles of women's wearing apparel in Mr. Spear's bed-room, upon the bureau and at other places. From this testimony, and the other facts adduced, it appears to the court that the conclusion must be reached that the husband did commit adultery with one or both of these women, there present during the dates specified, as alleged by the wife in her libel, between July 26, 1919, and Aug. 6, 1919.

The master in his report, referring to the alleged establishment of a residence in New York, stated:

"It is apparent that at this time she wished to establish a home of her own amid congenial surroundings in New York, where her interest and her friends were. The relations between the parties at this time must have been rather strained. . . .

"Can any one doubt that after the litigation is over she would pack her trunk and take the next train for New York. . . .

". . . That the residence of the husband is the residence of the wife is true, but two years prior to the final separation Mrs. Spear established a separate residence in New York, either as a harbor of refuge or on account of her fondness for the life there. . . .

". . . but in the present case the wife had established a separate residence of her own two years prior to the separation, and she apparently used the Wallingford residence more as a place to visit than to go and live. Therefore, having established her separate residence prior to the separation in New York, where she lived continuously for a greater portion of her time prior to her separation, and her business interests being there, [there] is no reason, in the opinion of the master, why she should change her residence to Philadelphia, except for the purpose of procuring a divorce."

1 D. & C.

Spear v. Spear.

After reading the report of the master, it is only natural to conclude that he based his findings upon the fact that, two or three years prior to the separation, an apartment in New York City was leased in the name of Mrs. Spear, and the master, for some reason which does not appear of record, finds that she did not like Philadelphia and intended, as the master expresses it, to "pack her trunk and take the next train for New York." From the record in the case, no objection was ever made by the husband to the occupancy of this apartment, and it seems to have been more of a haven for the wife's other than any residence of hers.

In the case of Barning v. Barning, 46 Pa. Superior Ct. 291, the libellant alleged as her right to claim Philadelphia as her domicile, that previous to her marriage her husband agreed to move to Philadelphia just as soon as he secured a position; that she married with the intention of returning to Philadelphia, and always had the intention of returning here. Rice, P. J. (March 3, 1911), at page 294, said: "Following out the theory of an identity of person, the law fixes the domicile of the wife by that of the husband, and denies to her during cohabitation the power of acquiring a domicile of her own separate and apart from him: 14 Cyc. of Law and Procedure, 846. This statement of the general rule is sustained by abundant authority. Her mere intention that his domicile should not be hers, even though expressed to her husband and assented to by him, could not alter the fact or detract from the legal consequences growing out of their cohabitation in New York in the relation of husband and wife. To hold that her intention to consider Pennsylvania her residence was, under the circumstances, equivalent to *bona fide* residence in the State, would defeat the manifest purpose of a statutory provision which ought not to be refined away by such subtlety of reasoning."

There was no evidence that the parties in the case of Spear v. Spear had been or were separated prior to the wife leaving the husband in August of 1919. It can readily be seen from the case of Barning v. Barning that the master is in error in quoting the law and in his findings that the libellant was competent to establish a separate residence of her own two years prior to the separation: Hollister v. Hollister, 6 Pa. 449.

In Angier v. Angier, 7 Phila. 305, Pierce, J., said: ". . . the dwelling together of parties in marriage implies of necessity that either they concur as to the place of their abode or one of them determines where it shall be. But as differences of opinion and wishes are liable to arise in this matter, the law must intrust to one of the parties the authority to fix the place and change it from time to time — when the concord of views which ought to subsist between persons so closely allied fails to do this—and the doctrine is familiar that this authority is vested by law in the husband."

In re Hartman, 70 N. J. Eq. 664, it was held that, where a husband and wife resided together most of the time at her home in New York City, but spent the week-ends at the husband's domicile in New Jersey, where he was engaged as a clergyman, the wife's domicile was that of her husband—New Jersey.

Regarding the rule just stated as absolute, it has been held not to be affected by the fact that the husband and wife are living apart in the absence of a judicial decree of separation or divorce: 19 Corpus Juris, 416.

When Mrs. Spear was forced from her home at Wallingford, Pa., because of the misconduct of her husband, she sought a haven of refuge in the place most natural for her to go—the home of her mother. Had she remained at his residence, such conduct might be considered as a condonation of his actions and bar her claim to remedy: 1 Bishop on Marriage and Divorce, § 123; Barber v. Barber, 62 U. S. 582; Reed v. Reed, 30 Pa. Superior Ct. 229.

It is clear from the evidence that Mrs. Spear did not intend to relinquish her domicile in the State of Pennsylvania. She remained at the home of her mother but two weeks and then returned to Philadelphia. Being forced from her husband's home because of his misconduct, the law gives to the wife the right to choose a domicile for herself for the purpose of conferring jurisdiction on the proper tribunal in an action of divorce, and it will not deprive her of the benefit of her residence in Pennsylvania because of occasional visits to her mother in New York City.

In Shaw v. Shaw, 72 Pa. Superior Ct. 191, it was held: "A domicile in Pennsylvania is not lost by occasional visits to other states, where there is no evidence to warrant a finding that the libellant intended to establish a residence without the State."

The testimony of Helen M. Spear is corroborated by servants of the hotel and several of her Philadelphia acquaintances as to her residing at the Windemere Hotel.

The court is of opinion that the master erred in finding that she was not a resident of the State of Pennsylvania.

As to the charge of adultery against the husband, James Spear, Jr., the court finds that the fact was clearly established by the testimony of the wife and the servants at the home in Wallingford.

The court also finds and concurs with the master in that respect in finding that the charge of adultery made by James Spear, Jr., in his cross-bill against Helen M. Spear, was not sustained by the evidence.

For the reasons above set forth, the report of the master in the case of Helen M. Spear against James Spear, Jr., is not approved; the exceptions filed on behalf of Helen M. Spear to the master's report are sustained and the court directs a rule be entered on James Spear, Jr., to show cause why a decree a divorce a mensa et thoro should not be entered.

The master's report in the case of James Spear, Jr., v. Helen M. Spear, dismissing the libel on the ground that there is not sufficient proof of the allegation of adultery, is approved by the court, and the exceptions thereto are dismissed.

## HELEN M. SPEAR v. JAMES SPEAR, JR.

### C. P. No. 2, Phila. Co., Sept. T., 1919, No. 183.

And now, to wit, June 5, 1922, after examination and consideration of the evidence in the case of Helen M. Spear v. James Spear, Jr., the court sustains the exceptions filed by the said Helen M. Spear, and it is ordered and decreed that the findings of the master are reversed. The court finds as a fact that the said Helen M. Spear is a bona fide resident of the City of Philadelphia, and that the court has jurisdiction. The court further finds that the said James Spear, Jr., did, at Wallingford, Pennsylvania, between July 26, 1919, and Aug. 6, 1919, commit adultery with one or both of the women named in the testimony. It is, therefore, concluded that the allegations of the libel are sustained and the libellant is entitled to a divorce a mensa et thoro.

Let final rule for divorce a mensa et thoro issue.

## JAMES SPEAR, JR., v. HELEN M. SPEAR.

Transferred from C. P. No. 4 to No. 2, Phila. Co., June Term, 1920, No. 294.

And now, to wit, June 5, 1922, the master's report in the case of James Spear, Jr., v. Helen M. Spear having been filed, recommending a dismissal of the libel, and the exceptions filed to said report by said James Spear, Jr., hav-

1 D. & C.

ing been argued by counsel, the exceptions are dismissed, and the report of the master is affirmed, and it is ordered and decreed that the libel filed by said James Spear, Jr., be dismissed.