## Cary v. Cary.

*Joseph Newman*, for libellant.

*J. J. Sullivan* and *James Patterson*, for respondent.

MARTIN, P. J., Jan. 2, 1930.—The libel filed in this case averred that the libellant and respondent were married in 1901 and lived together until Sept. 1, 1918, when the respondent "did, on or about Sept. 1, 1918, wilfully and maliciously desert the libellant without a reasonable cause, and did, on said date, absent herself from his habitation for and during the term and space of two years, and that she hath continued in her desertion of him from thence hitherto."

The respondent filed an answer denying that she deserted her husband.

The cause was heard by a master, who found as facts that the parties were married in Philadelphia on Nov. 14, 1901; that libellant and respondent resided in Philadelphia for nine years, and their last address was No. 1700 Pine Street; that after the separation libellant went to live at No. 1426 Lombard Street, where he now resides, and the respondent continued to live at No. 1700 Pine Street, until she moved to No. 1740 Ellsworth Street, where she now resides.

The master concluded that there had been a wilful and malicious desertion by the respondent for more than two years prior to filing the libel; that the averments of the libel were sustained by the proofs; and that libellant is entitled to a decree of divorce.

The evidence upon which the master relied was principally that of libellant. He testified that, on or about the 1st or 2nd day of September, 1918, his wife, without provocation, struck him in the face with part of a chair and inflicted injuries to his person; that she threw dishes at him, and that her conduct was such that it caused him to withdraw from his home; that she had him arrested and incarcerated for five or six days; that after this altercation he rented a room at No. 1426 Lombard Street, which he has occupied until the present time; that after he moved there he wrote a letter to his wife, requesting her to come to this place of residence that they might live together, but received no reply from her, and they continued to live apart.

He testified that he wrote to his wife, but did not state that the letter was delivered to her. She denied that she received the letter. She also denied that she struck libellant either with a chair or dishes. She testified that libellant was a heavy drinker, and when she remonstrated with him for drinking, he would become very abusive, and finally left, after beating her; and that he beat her again when they had their last quarrel on Sept. 1, 1918. She testified that she gave her husband no cause for leaving her; that he never asked her to come back after he deserted her; and that she had worked and main-

tained herself, with the exception of an order for support awarded to her by the court.

Mrs. Rose Jackson, a friend of respondent, testified that she had been in and about their home much of the time libellant and respondent lived together; that libellant was a heavy drinker, and that she often heard him raging and carrying on.

Libellant called no witnesses to corroborate his statement of abuse inflicted upon him. There was testimony of altercations, but they were not of a serious nature.

The libellant is demanding a divorce on the ground of desertion. According to his own statement, he left the home after trouble with his wife on or about the 1st or 2nd of September, 1918, and made no attempt to effect a reconciliation other than the alleged letter he said he wrote to his wife after he had taken a room on Lombard Street. He admitted that he saw his wife several times on the street, but that he never talked to her or asked her to live with him.

It was said by Judge Porter, in Micheals v. Micheals, 65 Pa. Superior Ct. 464, 466: "The legislation of the State of Pennsylvania has not indicated an intention to make the obtaining of a divorce an easy matter. The opinion of the master is merely advisory to the court, which it may accept and act upon or disregard, in whole or in part, according to its own judgment as to the weight of the evidence or the legal conclusions of the master. It was not intended that the court should derogate its own function and delegate the discharge of its duty to its-appointee. It is undoubtedly true that it is the duty of the court to give consideration to the opinion of the master, particularly where the veracity of witnesses is involved. But, even on such a question, the court must exercise its own judgment from an examination and consideration of the evidence, and it is in no sense bound to adopt the finding of the master or treat it as casting a burden on the party excepting to his report: Howe v. Howe, 16 Pa. Superior Ct. 193; Naylor v. Naylor, 59 Pa. Superior Ct. 547.

"Whether exceptions are filed to the report or not, it is the duty of the court to examine and carefully consider the evidence and determine whether it satisfactorily establishes the facts which, under the express authority of the statutes, authorize the court to enter a decree. These principles have been established by the decisions, not merely as founded upon public policy alone but as based upon any reasonable construction of the statutes which confer jurisdiction upon the courts. The appellate court must in every case, except where the facts have been determined by a jury trial, apply these principles in disposing of cases of this character."

In Young v. Young, 82 Pa. Superior Ct. 492, 495, in an opinion by Judge Henderson, the court said: "Neither in the Act of 1834 nor of 1895 is there any reference to such cruel and barbarous treatment or indignities to his person by the wife as forced the husband to withdraw from his house and family, as is provided in the Act of 1815 with reference to the conduct of the husband toward the wife; nor in either of the acts where cruel and barbarous treatment or indignities to the person is made a cause for divorce is there any limitation as to time within which the libel may be filed after the wrong is done as in the case of desertion. It nowhere appears that it was the legislative purpose to make cruel and barbarous treatment or indignities to the person the equivalent of desertion. The causes are entirely distinct and the evidence sustaining one is of a wholly different nature from that necessary to establish the other. We cannot regard evidence of cruelty or indignities practiced by the wife as sufficient to establish a desertion of her husband by her. The law

provides a specific remedy for a husband injured by the cruelty of his wife or her conduct amounting to indignities to his person, and to this the injured party must appeal if he would have relief. It cannot be said with legal accuracy where a wife's conduct has become so intolerable to her husband that he finds it advisable or necessary to take up another habitation, and where the wife remains in the home which they have jointly occupied through a period of years, that his wife has wilfully and maliciously absented herself from the habitation of her husband."

The law stated in Young *v*. Young, *supra*, rules the case at bar. The exceptions filed on behalf of the respondent must be sustained and a divorce refused.

And now, Jan. 2, 1930, the exceptions filed by respondent in the above-entitled case are sustained, the finding of the master is reversed, and the libel is dismissed.