## Little, Appellant, *v.* Little.

*Divorce—Desertion—Evidence—Insanity.*

Where a husband packs up his clothes and deliberately leaves the house where he and his wife resided in Pennsylvania, and goes to another state without giving any reason for his departure, and without establishing or offering to establish a home for his wife in his new domicile and without contributing to her support, and seven days after the expiration of two years from the day he left Pennsylvania he is adjudged a lunatic and committed to an insane asylum, his wife will be entitled to a divorce for willful and malicious desertion persisted in for two years.

Argued Dec. 16, 1913.    Appeal, No. 203, Oct. T., 1913, by plaintiff, from order of C. P. No. 5, Phila. Co., June T., 1912, No. 3,906, refusing divorce in case of May C. Little v. Newton D. Little.   Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Libel for divorce.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing divorce.

*J. F. Shrader,* for appellant.—The desertion in the case at bar was without justification and without the consent of the libelant, and was persisted in for two years.   It was therefore willful and malicious: Hedderson v. Hedderson, 35 Pa. Superior Ct. 629; Van Dyke v. Van Dyke, 135 Pa. 459; Whelan v. Whelan, 183 Pa. 293; Klinger v. Klinger, 22 Pa. Dist. Rep. 297; Burns v. Burns, 38 Pa. Superior Ct. 221; Hinchcliff v. Hinchcliff, 47 Pa. Superior Ct. 544.

No printed brief for appellee.

OPINION BY ORLADY, J., March 12, 1914:
The parties to this action were married at Chicago, Illinois, February 12, 1889, and after living together

there, and in the state of New York until September 12, 1909, they removed to Philadelphia, where the wife has continuously resided with a fixed domiciliary intent. The husband remained with the wife until December 1, 1909, when he returned to New York, and since that date, he has not contributed anything toward the support of the family. The libel in this case was filed July 26, 1912, and charges that the respondent "did willfully and maliciously desert the libelant" for and during the preceding two years. On the petition to the wife, a member of the Philadelphia bar was appointed committee ad litem, for the reason that, as set out in her libel the respondent at that date was detained as a lunatic in a New York state hospital.

Service of the subpœna was had by publication, a master was appointed, and after a number of hearings a report was filed in which it was held by the master, as a conclusion of law, that "the respondent has not been guilty of a willful and malicious desertion which would justify the granting of a decree in divorce" and recommended the dismissal of the libel. Exceptions to this report were overruled by the court below; the report was confirmed and the libel dismissed. The libelant appealed and from this record it appears that the respondent on December 8, 1911, was committed, by legal process, to the Manhattan State Hospital, in the state of New York, and that since that date "he has been continuously confined in hospitals for the insane, suffering from paranoia, a chronic incurable mental disorder, which is characterized by fixed, systematized delusions of a persecutory type." There is nothing in the record to indicate that this application is made other than in sincerity and good faith, but there is always a burden on the libelant to establish clearly by the testimony, that sufficient grounds exist for the granting of a divorce. From the date of the commitment of the respondent as an insane person, he could not be held to be persisting in a willful and

malicious desertion, because he was not only irresponsible for his acts, but was deprived of exercising a willful act. Separation is not desertion. Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, willfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other party: Ingersoll v. Ingersoll, 49 Pa. 251. This refers to the inception of the desertion, but it is clear that, under our statute, it must be willfully and maliciously persisted in for two years, in order to entitle the libelant to a divorce on the ground of desertion.

The important dates are clearly fixed by the testimony. The master finds that on December 1, 1909, without any cause, "he left in the afternoon, while the libelant was at work, taking with him all his possessions, which consisted of just his clothes, which were packed in a couple of suit cases. He gave no definite reason for his leaving, other than that he would not live in a place like Philadelphia. He left without making any plans for the family to go back to New York, or to any other place." The wife testified: "He asked if we would go when he got settled, and we said we would be very glad to go for the sake of the children, and my sake, but he didn't establish any home for us anywhere and consequently we could not go to one." This was clearly sufficient under our decisions to fix the time when the statutory two years would begin to run. And it is as clearly shown that to the date of his commitment as an insane person on December 8, 1911, he contributed nothing to the support of the family or voiced any intention of having them with him. It does not appear by the testimony whether the serious malady which affected him was a sudden attack, or had been of gradual development, but we must accept the date of December 8, 1911, as the time when he was first mentally and legally incapacitated from continuing in a

willful and malicious desertion,—and the legal time was then complete under our statute.

The libelant, with great candor, called the attention of the court by petition, to the fact of her husband's incapacity when she presented her libel, so that a committee ad litem might be named, to make a proper defense if any existed. This committee visited his ward in the asylum, was examined by the master and testified as follows: "Q. Have you been able to secure any evidence to offset the testimony that has been offered here on behalf of Mrs. Little, showing that Mr. Little had deserted her? A. No, I haven't. He acknowledged to me that he had. He said it was true. He seemed to talk rationally, and after explaining to him that I would make defense, if he wanted one, he didn't want me to do it. I explained that I had been appointed guardian ad litem, and the grounds on which the suit was brought, and he wanted to know if they could get a divorce on the ground of insanity. I explained that the ground in this case was desertion—that his wife claimed he had deserted her. He said that was true—that he had, and he didn't want to bother with it." This mental relation of the respondent is confirmed by two eminent specialists who were professionally familiar with him, and who testified that "he had an intellectual appreciation of the whole proceeding, he actually knows all about it, but takes the wrong attitude towards the circumstances. He stated that it was his intention to seek a livelihood away from her, and endeavor to forget the part of his life in which she was a factor, his disease is incurable."

We held in Hedderson v. Hedderson, 35 Pa. Superior Ct. 629, "It is not necessary to prove actual malice, indeed the cases are rare in which this can be done. If the desertion is intentional it is willful, if willful, malicious. This is the current of all our authorities: Burns v. Burns, 38 Pa. Superior Ct. 221; Hinchcliff v. Hinchcliff, 47 Pa. Superior Ct. 544.

If the unfortunate mental condition of this respondent had not been developed by this record, the libelant's testimony would meet the test of our many decisions, and we do not think it should weigh against her otherwise good case. She was not in any way responsible for his affliction. The cause of divorce was complete before he was adjudged to be of unsound mind, and she should not be held by the bonds he deliberately ignored for two whole years, in his willful and persistent desertion of his wife and family. Our statute fixes the time and not the court and where there is no evidence of collusion or bad faith if it meets the statutory requirements, it is not material how long or how short the excess over the time fixed by the statute may be.

A careful examination of all the testimony impels us to the conclusion that the divorce should be granted. We regret that we are not aided by an opinion of the lower court in the consideration of the testimony on which the master's conclusions are founded. Following the rule laid down in Angier v. Angier, 63 Pa. 450; Middleton v. Middleton, 187 Pa. 612, we have carefully examined the testimony taken by the master, and we cannot agree with the legal conclusion reached by him: Howe v. Howe, 16 Pa. Superior Ct. 193; Baker v. Baker, 195 Pa. 407. The decree dismissing the libel is reversed, and the record is remitted to the court below with direction to enter a decree in accordance with the conclusions herein reached.