## Frederick v. Frederick

*Lewis R. Long*, for libellant.

McCLUSKEY, P. J., January 18, 1943.—Exceptions to the report of the master declining to recommend a divorce a. v. m.

Jennie M. Frederick and Will J. Frederick were married in 1917 and lived together until April of 1934.

During the 17 years of their married life, Mrs. Frederick bore her husband two sons, kept the home, reared the boys and provided a living for the family by managing a farm. She stocked the farm with cattle, produced and sold milk, and with the aid of a hired boy cultivated the land. Mrs. Frederick herself did much of the hard work, plowing, harvesting, caring for the cattle and horses. Frederick, a taciturn man, some 20 years older than his wife, proved to be erratic and irresponsible. He did little, leading an idle and aimless life. On April 22, 1934, Frederick left their home without any apparent reason, wandered over to Nazareth, took up quarters at the Y. M. C. A. and got a job at the Clewell Pretzel Works in Nazareth. Six months afterward, in September of 1934, the secretary of the Y. M. C. A. at Nazareth where Frederick was staying reported that Frederick was acting queerly and had him examined by two physicians. As a result, Frederick was committed to the Allentown State Hospital upon the certificate of the two examining physicians and pursuant to The Mental Health Act of 1923. Since his commitment, Frederick has been detained at the hospital and Dr. Hunsicker, who is in attendance there, testified that Frederick's ailment has been diagnosed as dementia præcox, and that the fair prognosis of his case is incurability and progressive deterioration.

Libellant has asked for a divorce a. v. m. on the grounds of wilful and malicious desertion and cruel and barbarous treatment.

Robert S. Siegel, Esq., the master appointed by the court to take testimony and report, has declined to recommend a divorce, concluding as a matter of law that the appointment of a committee ad litem for Frederick was irregular, that libellant failed to sustain the burden of proof as to cruel and barbarous treatment, and that the alleged wilful and malicious desertion cannot be held to have been persisted in for the statu-

tory period of two years without cause, by reason of the intervening incompetency and commitment of respondent.

After studying the record, and particularly the testimony, we must conclude that the findings of fact made by the master are established by the evidence, that his conclusions of law are exact and indeed inevitable. The master, we think, deserves commendation for the impartiality of his report and for the care with which he has exhausted the possibilities of libellant's case as made for the record.

In dismissing the exceptions taken to the master's report, however, we cannot but be impressed by the meritorious cause which counsel for libellant has advocated. The fundamental difficulty, of course, is that the legislature of our Commonwealth has not clearly provided that hopeless insanity shall be a ground for divorce. In the codification of the laws relating to and regulating divorce, there are a number of sections which treat of insanity. The courts of common pleas are given jurisdiction to entertain a libel for divorce even though the respondent is non compos mentis: The Divorce Law of May 2, 1929, P. L. 1237, sec. 18, 23 PS §18. It is specifically declared that if respondent is weak-minded or a hopeless lunatic the fact of lunacy shall be set forth in the libel: The Divorce Law of May 2, 1929, P. L. 1237, sec. 25, as amended by the Act of May 25, 1933, P. L. 1020, sec. 1, 23 PS §25. Service upon a lunatic is authorized and the rights of the lunatic safeguarded by provisions for notice to the next of kin and the appointment of a committee ad litem: The Divorce Law of 1929, sec. 30, as amended by the Act of May 18, 1937, P. L. 719, sec. 1, 23 PS §30. There is also a section relating to the proof of insanity which is somewhat perplexing and which requires that no divorce shall be granted to libellant, in any such case, unless it be proved beyond a reasonable doubt that respondent is hopelessly

insane: The Divorce Law of 1929, sec. 53, 23 PS §53. It might seem inferable that when drafting this section the legislature entertained an intention to make hopeless insanity a ground for divorce: see Baughman v. Baughman, 34 Pa. Superior Ct. 271 (1907). Otherwise, the legislature would appear to require proof of an immaterial fact beyond reasonable doubt since a libellant who is able to establish another good cause for divorce is entitled to a divorce whether respondent is insane or not. And it is entirely consistent with this inference that where respondent is hopelessly insane or has been shown to be hopelessly insane provision for his future is made by a section of the act authorizing permanent alimony: The Divorce Law of 1929, sec. 45, 23 PS §45. Our Superior Court, however, has rejected such an interpretation: Baughman v. Baughman, supra; Hickey v. Hickey, 138 Pa. Superior Ct. 271 (1940). It is equally inferable that in requiring proof of alleged insanity the legislature intended to justify the appointment of a guardian ad litem by evidence made part of the record. Such a construction of the legislative intent is corroborated by that section of the law conferring jurisdiction which specifically limits the jurisdiction of the common pleas court to those libels in which a ground for divorce set forth and included in section 10 of the act is alleged: The Divorce Law of May 2, 1929, P. L. 1237, sec. 18, 23 PS §18. And, of course, hopeless insanity does not appear in section 10 of the act as a ground for divorce: The Divorce Law of 1929, sec. 10, 23 PS §10.

While it is settled that one having a recognized ground may proceed to divorce a spouse who is a hopeless lunatic where the cause for divorce was given before the spouse became a lunatic (see Hickey v. Hickey, supra, p. 274), and possibly even afterward (see Baughman v. Baughman, supra), nevertheless, the present libellant is transfixed by a dilemma from which the courts, as the law stands today, appear helpless to

rescue her. She has not been able to bring forward any evidence whatsoever of the alleged cruel and barbarous treatment. Our Superior Court has emphatically rejected the proposition that cruel and barbarous treatment is made out by proof of neglect and nonsupport: Headland v. Headland, 88 Pa. Superior Ct. 417, 418 (1926). Cruel and barbarous treatment is said to involve conduct amounting to actual personal violence, or creating a reasonable apprehension thereof, so as to render further cohabitation dangerous to physical safety: Davidsen v. Davidsen, 127 Pa. Superior Ct. 138, 141 (1937). On the other hand, in attempting to establish wilful and malicious desertion, libellant is thwarted by a difficulty purely logical but, nevertheless, at present insuperable. Respondent having been committed to the Allentown State Hospital six months after abandoning the marital domicile and having been since then detained in the Allentown State Hospital, he cannot be held to have persisted in the desertion, according to the language of the act, for two years without cause: Little v. Little, 56 Pa. Superior Ct. 419 (1914). Nor could it consistently with respondent's commitment be maintained that he persisted in the desertion wilfully and maliciously: Little v. Little, supra, p. 421.

Under the view which we take of this case, it becomes academic that counsel for libellant did not proceed precisely in accordance with the act for the appointment of a committee ad litem. The omission to serve notice upon the next of kin, however, is not a mere procedural irregularity to be waived aside after the cause has come on for a hearing. In the first place, a person non compos mentis cannot himself be held to waive such irregularities, nor can his committee waive them for him. And in the second place, the legislature in providing for notice to the next of kin and for the opportunity for such next of kin to move for the appointment of a committee quite evidently fixed

upon such procedure as best calculated in the great majority of cases to protect the rights of the lunatic with the idea that the next of kin would be the person most interested after respondent himself. Had libellant been able to establish a recognized cause for divorce, we believe that this inadvertence in procedure must have been held a material departure vitiating the entire proceeding.

And now, January 18, 1943, it is ordered, adjudged, and decreed that the exceptions to the report of the master denying a divorce a. v. m. be and hereby are dismissed.