McDermott *v.* McDermott, Appellant.

Argued April 27, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. Paul Farrell,* for appellant.

*A. M. Oliver,* for appellee.

Opinion by James, J., July 13, 1934:

Libellant filed his libel on November 13, 1930 alleging wilful and malicious desertion by his wife on March 15, 1927, later amended to May 15, 1927, and respondent filed an answer denying the allegations of the libel. A hearing was had before Egan, J., on June 15, 1933, who, on July 6, 1933, entered a final decree of divorce in favor of the libellant.

The parties were married at Greensburg on October 2, 1923 but separated on the same day and lived apart

until November 2, 1926, when they were re-married and lived together in their own apartment until May 15, 1927. On this date, according to the testimony of the libellant, he was ordered to stay out of the apartment by the wife's father and two brothers who said they would take care of his wife and did not need him to take care of her and that at the same time his wife told him to get out. He took some of his clothes and went to work that night and the following evening he returned but she refused to let him into the apartment. The next time he saw his wife was on the night of the birth of the baby and he did not see her again until the early part of September when he went to his wife and asked her to return to live with him but she refused. A short time later, he was arrested on the charge of desertion and non-support, as a result of which an order was made against him to pay $12 a week for the support of his wife and child. He continued to pay the order of support until the death of the child and continued making payments from that date down to the time of the hearing. Libellant testified that after the death of the child he went to his wife and requested her to live with him and she refused again. Libellant is supported in his story as to the occurrence which took place on May 15, 1927, by the testimony of his sister who had been living with them for some time and who continued to live with the wife until the wife left the apartment several months after the baby was born.

Respondent, in her testimony, states there was no quarrel on May 15, 1927 and that her father never ordered or requested the libellant to leave their home. Her testimony is supported by that of her father and several other witnesses.

Standing alone, it is difficult to reconcile the testimony of the libellant and respondent but taking into consideration the testimony of the sister, Ann McDer-

mott, whose testimony was designated by the court below in its opinion as a witness that impressed him as one to be believed, and the testimony of the probation officer of Allegheny County, who produced the notes of what occurred at the hearing in court, wherein it appears that "They had a little argument about going through the dresser drawers. She doesn't want to go back to live with him. Defendant says his wife told him to leave and she struck him on the head. He is willing to go back to prosecutrix but she will not go back. Says he has been making arrangements to go away. Prosecutrix says she believes defendant is infected and the baby's eyes are seriously infected. Defendant earns $35 a week. $12 a week for wife and child. Defendant promised to pay and not to go away," we are convinced that libellant made an honest effort to return to his wife and to have her live with him.

An examination of the record does not disclose any real cause or justification for the respondent refusing to live with libellant. Some intimation was made that libellant was diseased but we can find no evidence to justify such conclusion.

If the testimony of the libellant is to be believed, he left the joint home under the compulsion of the wife and her relatives and his wife refused to permit him to return; that later she removed from their joint apartment and has since persistently refused to resume relations with him. Under these circumstances, a majority of the court is of the opinion that a cause of wilful and malicious desertion has been established.

In arriving at this conclusion we have considered and given weight to the fact that the judge who saw and heard the witnesses had a much better opportunity than the appellate court to form a correct judgment as to their credibility.

Decree affirmed.