## Pierce v. Pierce

*John P. Butt*, for libellant.

SHEELY, P. J., October 28, 1939.—Libellant has filed exceptions to the report of the master in this case excepting to the master's conclusion that the causes for divorce alleged in the libel had not been sustained. The libel alleged desertion for a period of two years beginning on June 3, 1934, and also alleged indignities to the person of libellant. As to the latter charge there was no testimony whatever and in her brief libellant states that she did not seriously press that charge but rested her case on the charge of desertion.

The testimony, the truthfulness of which we have no occasion to doubt, shows that the parties were married on

May 18, 1934, after having known each other three months and having been employed at the same establishment for about two months. After their marriage they occupied a room in a boarding house in Baltimore in which respondent had previously resided. On May 29, 1934, respondent brought his wife to her home in Gettysburg for the purpose of spending Memorial Day with her parents, and returned to Baltimore that evening. Libellant returned to Baltimore on June 3d and, before arriving at her home there, heard that her husband had been on a party with another girl and several other couples on the night of May 29th. When she arrived at the boarding house about 3 p.m. she found her husband in the landlady's bed on the first floor of the house. She talked to him about his conduct on May 29th and he admitted the truth of the stories and said that he was not ready to be tied down and that if she did not like it she should return to Gettysburg. The conversation lasted from 30 to 45 minutes but the record does not disclose what else was said or what, if anything, was said about respondent's being in the landlady's bed. Apparently, we are asked to infer that he was there for improper purposes, but there is no evidence of his state of dress or of the whereabouts of the landlady except that she was in the building.

After this conversation libellant went to their room on the second floor, secured her belongings, and returned to Gettysburg where she has since remained. Later that month, respondent came to the home of libellant's parents about 7 o'clock on a Sunday morning. He was accompanied by two other couples, all of whom were "tight" when they got there. Libellant went swimming with them and about noon the party returned to Baltimore and libellant returned to her home. Since that time she has not communicated with nor heard from her husband. There is no evidence of any conversation between libellant and respondent on that date concerning their marital status.

Libellant further offered testimony of one Van Leewan to the effect that he was with respondent on the night of May 29, 1934, and that apparently respondent had committed adultery. He further testified that respondent had "lived with" the landlady for a year after he was married, and that respondent had told him that he had left libellant up in Pennsylvania and did not intend to go back any more. With this testimony it is somewhat surprising that libellant did not charge respondent with adultery. The charge is desertion, however, and the evidence of adultery is relevant and material only insofar as it might furnish a background or reason for the alleged desertion. The question to be decided in this case is whether a husband is guilty of desertion when, upon admitting improper conduct not amounting to adultery (libellant did not know the circumstances testified to by Van Leewan at the time of separation), he tells his wife that if she does not like it she can leave, and then tells other persons that he left his wife and did not intend to go back.

Desertion is made a ground for divorce by The Divorce Law of May 2, 1929, P. L. 1237, sec. 10 (d), when the guilty party "Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years". In the present case libellant was the one who left the common habitation, but she contends that the testimony makes out a case of constructive desertion on the part of respondent on either one of two theories: (1) She was forced to leave by conduct on the part of respondent, which amounted to a ground for divorce, to wit, adultery committed by him on May 29, 1934; or (2) his failure to receive libellant upon her return to Baltimore on the night of June 3, 1934.

In Hartner v. Hartner, 75 Pa. Superior Ct. 342, 344 (1921), it is stated that the term "constructive desertion" is a term unknown to our law, although divorces

have been granted on the ground of desertion where libellant was actually turned out of doors by respondent: Howe v. Howe, 16 Pa. Superior Ct. 193 (1901) ; McDermott v. McDermott, 113 Pa. Superior Ct. 255 (1934). In the present case, however, respondent neither forced libellant to leave their common habitation nor did he prevent her from returning to their home after her visit to Gettysburg. Her leaving was based solely upon his improper conduct, and the question remains whether this conduct can be construed to constitute a desertion on his part.

In Young v. Young, 82 Pa. Superior Ct. 492 (1924), a situation very similar to the present was presented. There a husband instituted divorce proceedings against his wife on a charge of desertion after he had left the common domicile because of ill treatment from the wife amounting to cruel and barbarous treatment and indignities. His theory was that this treatment constituted constructive desertion. The court there said (pp. 495, 496) :

"It nowhere appears that it was the legislative purpose to make cruel and barbarous treatment or indignities to the person the equivalent of desertion. The causes are entirely distinct and the evidence sustaining one is of a wholly different nature from that necessary to establish the other. We cannot regard evidence of cruelty or indignities practiced by the wife as sufficient to establish a desertion of her husband by her. The law provides a specific remedy for a husband injured by the cruelty of his wife or by her conduct amounting to indignities to his person, and to this the injured party must appeal if he would have relief. It cannot be said with legal accuracy where a wife's conduct has become so intolerable to her husband that he finds it advisable or necessary to take up another habitation, and where his wife remains in the home which they have jointly occupied through a period of years, that his wife has wilfully and maliciously absented herself from the habitation of her husband. . . . As long as the wife remains at the habitation and

keeps the domestic flag flying, she is not subject to the charge of desertion whatever other adequate provocation she may have given to sustain a libel for divorce."

It is true that since Young v. Young, supra, was decided there have been certain statutory changes in the right of a husband to secure a divorce for cruel and barbarous treatment or indignities to the person, but the principles there announced still apply. The exact situation was presented in Kershaw v. Kershaw, 5 Dist. R. 551 (1896), where a husband sought a divorce on the ground of desertion after he withdrew from the society of his wife. The court said (p. 552):

"True, he gave as an excuse for his desertion of his wife that she had committed the crime of adultery. If he had been the respondent and his wife the libellant, suing for divorce because of his desertion, he could, undoubtedly, have defeated her action by showing that he had deserted her for good cause. But he cannot be permitted to desert his wife, even for a good cause, and then ask for a divorce upon the ground that she has deserted him. He must raise the true issue and claim his divorce for the adultery, which he says she has committed, and not for a desertion which she admits he never committed." But see Rinewalt v. Rinewalt, 37 Montg. 148 (1921).

Libellant, in support of her position, relies entirely upon Freedman on Marriage and Divorce, sec. 243 et seq. The authors recognize the theory of constructive desertion where there is an actual or constructive turning out of doors, but on page 619 say:

"The true rule is that desertion is not made out where the conduct of respondent amounts to ground for divorce and causes libellant to withdraw, but there is wanting a turning out of doors, actual or constructive. The remedy of the injured party in such a case is to assign the cause for divorce which compelled the departure." Continuing on page 620 the authors say:

"Thus, if a husband commits adultery, in consequence of which the wife departs, her withdrawal is justified by a reasonable cause, and she cannot be charged with desertion. She is, indeed, entitled to a divorce from him on the ground of adultery. The withdrawal of the wife, however, although legally justified, is not by the compulsion of her husband. . . . It cannot, therefore, be said that he is guilty of desertion."

Applying these principles to the case of the present libellant, it is at once evident that she was manifestly justified in refusing to continue to live with her husband if he declared his purpose to continue his improper conduct, and that she was not guilty of desertion in withdrawing from their habitation. But it is also evident that, however reprehensible his conduct might have been, he was not guilty of desertion. Libellant was neither compelled to leave their home nor to accept his statement that he intended to continue his improper conduct. Had she remained in the home and he left because she would not consent to his conduct, he would have been guilty of desertion, but under the circumstances presented in this case, he was not guilty of that charge.

On the record as it now stands the divorce must be refused. However, the record strongly indicates that libellant has a cause for divorce on the ground of adultery if the testimony on this point were elaborated and more fully developed. If the present libel were dismissed, as we would be required to do on the present record, there might be a question of libellant's right to file a new libel alleging a ground for divorce which existed and was known at the time of filing the original libel. We will, therefore, give libellant an opportunity to amend the present libel if she so desires, after which further proceedings may be had and respondent's rights protected.

And now, October 28, 1939, the exceptions to the report of the master are overruled, and it is ordered that the libel in divorce be dismissed at the cost of libellant unless

426

libellant shall, within 30 days of this date, file an application to amend the libel. If an application to amend is filed, further proceedings may be had as then ordered.