## Carl v. Carl

*Harry B. Crytzer,* for libellant.
*William S. Morrow,* for respondent.

RICE, P. J., October 23, 1943.—In this action Gladys Carl has applied for an absolute divorce from her husband Charles C. Carl, Jr., on the grounds of indignities and desertion. He has not contested the application in any manner, except to have an attorney appear for him, and she was the only witness before the master,

who has made a brief report recommending a decree of divorce on both grounds. We have carefully read and considered the testimony, which consists of only two and one-half pages of double-space typewriting, is very meager, is not clear and convincing on vital questions and leaves big gaps in the chain of events that undoubtedly took place. We cannot agree with the master and conclude that libellant has not met the burden of proof resting on her.

"The burden is upon the libellant to prove his case by clear and satisfactory evidence, and there must be a preponderance of the evidence in his favor: *Sleight v. Sleight*, 119 Pa. Superior Ct. 300 . . . *Rinoldo v. Rinoldo*, 125 Pa. Superior Ct. 323. . . .

"In a proceeding dissolving a marriage contract, the case is not to be disposed of on a doubtful balance of the evidence nor upon unsubstantial inferences. There must be a presentation of a clear and satisfactory case on which the determination of the court may be confidently rested, and one who would win a case of this character must be clear of everything which is charged as a cause of separation against the opposite party: *Wagner v. Wagner*, 112 Pa. Superior Ct. 485, 499 . . .": Murfit v. Murfit, 134 Pa. Superior Ct. 327, 332, 333.

The parties were married April 12, 1941. Before their marriage, respondent lived with his parents, and libellant worked for Milt. Bower and lived in his home. After their marriage, respondent continued to live with his parents, and libellant continued to live at the home of Milt. Bower, where she remained until July 8, 1941, when, on account of her pregnancy, she ceased to work for Bower and went to the home of her husband's parents to live, where she lived until July 15, 1941, when her husband took her to her parents' home. From her parents' home she was taken to the Carlisle Hospital for the birth of her child, where on September 26, 1941,

her child was born. From the hospital she was taken by her brother back to her parents' home, where she has since lived.

There is no evidence of any indignity to her committed by her husband prior to July 14, 1941. On that day he took her for a ride in his car for the purpose of having a talk on the question where she should go for the birth of her child and drove to a beer joint near Landisburg. He went inside the beer joint, but she remained in the car because she had a maternity dress on and did not want to be seen in such a costume. He did not come out until about 2 o'clock the next morning, about four hours later, and all that time she sat in the car and became quite cold. When he came out of the beer joint, he was in a drunken condition and drove the car over a rough roundabout road to the home of her parents; upon his insistence she got out of the car and went into the house of her parents, he saying to her: "Don't come back. You have your baby here. I'll never make a home for you so long as my parents are living." Respondent's conduct on this occasion, allowing her to remain in the car for four hours while he was drinking in a beer joint and get cold and then driving rapidly over a rough road, especially considering her pregnant condition, was an indignity to her. But this was the only occasion on which he committed any indignity towards her and it cannot be considered a course of conduct. His telling her he would not make a home for her while his parents lived cannot be classed as an indignity under the divorce statute, but it has a bearing on the question of desertion only. There is no evidence of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, or any other acts or omissions manifesting settled hate and estrangement on the part of respondent toward libellant. Besides, there is no evidence that on account

of any conduct of his her condition became intolerable and her life burdensome. The evidence shows nothing more than respondent's intention to live with his father and mother while they lived and his refusal to make a home for her while they lived, but that relates to the alleged desertion and not to the alleged indignities. Hence, the evidence does not sustain the allegation that respondent committed such indignities to the person of libellant as to render her condition intolerable and her life burdensome.

Section 10 of The Divorce Law of May 2, 1929, P. L. 1237, provides:

"When a marriage . . . shall hereafter be contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse . . . (d) Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years . . ."

In Ingersoll v. Ingersoll, 49 Pa. 249, 251, the Supreme Court said:

"Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other."

This statement of the law has been accepted and approved in many cases, two of the most recent ones being Mallory's Estate, 300 Pa. 217, 223, and Wagner v. Wagner, 121 Pa. Superior Ct. 413, 415.

It is important to note that, in this statement of the law, it is said that "desertion is an *actual* abandonment," not that it is a *constructive* abandonment. The intent to desert must exist when the desertion first

occurs, and a desertion cannot begin until there is an intent to desert. In the Ingersoll case it was also held that "separation is not desertion," meaning that the mere fact that the spouses are not abiding in the same habitation does not charge the absent spouse with desertion. There may be a separation by consent of the parties, as where the husband goes elsewhere to earn money or where the parties cannot live together and agree to separate, and there may be a separation with cause, as where one spouse leaves on account of the cruelty or indignities of the other, and in either case the separation is not a desertion. The statutory provision makes use of the words "desertion" and "absence," and each word has its proper place in the concept of desertion as a generic term. Desertion, in its initial stage, is a positive act, a leaving, a withdrawal, and absence is the consequence of the leaving or withdrawal. The words "habitation of the injured and innocent spouse" designate the place from which the guilty spouse withdraws and absents himself, and the word "habitation" refers to the place of abode, settled dwelling, residence, or house (Webster) of the deserted spouse in which she was actually living and abiding immediately prior to the withdrawal of the other spouse. When one spouse actually withdraws from the habitation of the other spouse, the idea that they had a common habitation is involved. It is necessary, therefore, that they establish a common habitation before either can be said to withdraw from the habitation of the other. A common habitation is essential to the maintenance of the family relation. When one spouse withdraws from the common habitation without a reasonable cause and without the consent of the other spouse and absents himself or herself therefrom, with the intention then existing to abandon cohabitation, a wilful and malicious desertion begins, and when this desertion and absence continues for two years a cause

for absolute divorce is afforded the spouse who remained in the common habitation.

In this case it is alleged in the libel that respondent deserted libellant on July 15, 1941. On July 8, 1941, libellant, being pregnant, ceased to work for wages and went to the home of her husband's parents to live with him there, and they lived together in this home until July 15, 1941. On July 14, 1941, respondent took libellant out in his car for a ride and, after spending about four hours at a beer joint, took her to the home of her parents, where he left her, insisting upon her getting out of the car and saying: "Don't come back. You have your baby here. I'll never make a home for you so long as my parents are living." She testified that he forced her to get out of the car and that she could not stand fighting any more on account of her pregnant condition, but she did not testify that he used actual physical force or threats to harm her to get her out of the car and it is apparent that they had an argument about her going to her parents' home.

It is undoubtedly true that the parties did separate from each other on July 15, 1941, but did he leave, or withdraw from, her habitation? Their common habitation was the home of his parents, and he continued to live with them, but she acquired a new habitation, the home of her parents. How then can it be said that he withdrew, and absented himself, from her habitation? On July 14th she voluntarily entered his car for the ride, and on July 15th she voluntarily got out of the car at her parents' home, as there is no evidence that he actually forced her. She had the opportunity to testify fully to the facts, but her testimony is lacking in details. Now, when he took her to her parents' home, did he have an intention at that time to abandon cohabitation with her? She does not testify to any words or acts of his to indicate such intention. He told her he would not make a home for her while his parents

lived, but he did not tell her he would no longer have marital relations with her. His statement that he would not make a home for her while his parents lived was a conditional statement and left open the possibility that at some time he would make a home for her. While it is essential to the maintenance of the family relation that spouses have a common habitation, yet they may live separately and continue to cohabit. It is the cessation of cohabitation by the deserting spouse as a matter of fixed intention that is essential to a desertion, and since there is nothing in the evidence to show an intent of respondent on July 15, 1941, to abandon cohabitation with libellant he did not desert her on that date, and libellant has failed to make out a case of desertion. There is an old rule of law to the effect that, when a husband removes from his prior habitation with his wife and acquires a new one, fit and suitable for her according to the decided cases, she is obliged, at his request and within a reasonable time, to go to his new place of abode and live with him there, but there is no rule of law that requires a husband to follow his wife and live with her in the place of abode she may choose. This respondent was not, therefore, obliged to go with his wife and live with her at the home of her parents, and it cannot be said that he either actually or constructively absented himself from her habitation. Having neither withdrawn himself from her habitation nor absented himself from her habitation, he did not desert her.

It may be contended, however, that the ·doctrine of constructive desertion should be applied to the facts of this case and that, according to that doctrine, libellant is entitled to a divorce. In the first place, there is a very serious doubt whether that doctrine has any foundation in the divorce statutes, and, in the second place, if such doctrine is sound, the doctrine has no application to the facts of this case.

This doctrine seems to have had its inception in the case of Howe v. Howe, 16 Pa. Superior Ct. 193, 198, in which Judge Orlady said:

"Desertion under the statute is the wilful abandonment without cause of one party . . . and against the will of the party abandoned, for the period of two years. If the husband's conduct is so cruel towards his wife that she cannot live with him in safety to her health or without peril to her life, and for such reason she leaves him and abandons his home, she does not thereby commit the crime of desertion. In such a case she does not leave her husband or his home in consequence of any wilfulness on her part, but is compelled by the cruelty of the husband and against her own will so to do. . . . He as completely commits the crime of desertion when by his cruel conduct he compels her for safety to leave him and his home as when he wilfully and without cause abandons her [citing cases of other States] . . . In cases like the present, when the wife is obliged by the cruelty or violence of her husband to leave him for safety and to avoid personal injury, her compulsory flight amounts to desertion by him. The burden of proof is upon her to show that her abandonment was not voluntary but that she was compelled to leave by his treatment or command: Starkey v. Starkey, 21 N. J. Eq. 135. In this case the evidence clearly establishes the fact that the wife left the home of the respondent for the double reason that he commanded it and that she could not stay with safety . . . We are of opinion that the wife was fully justified in leaving the home of her husband on account of his command to do so and his brutalities toward her, and that they amounted to a wilful and malicious desertion by him which has continued for the statutory time."

In Hull v. Hull, 14 Pa. Superior Ct. 520, only a short time before the Howe case, the Superior Court quoted as above from Ingersoll v. Ingersoll, supra, and with

numerous Pennsylvania cases of the same kind inter-
preting and applying the provisions of the Act of
March 13, 1815, 6 Sm. L. 286, authorizing divorces
from the bond of matrimony for wilful and malicious
desertion as applicable precedents, it is very strange
that Judge Orladay should find it necessary to resort
to the reports of cases in other States to find support
for his doctrine. It is not logic and it is not statutory
law that, when a wife leaves her husband's habitation
on account of his cruelty, he becomes guilty of deser-
tion; the one who leaves is the one who deserts, unless
the leaving is with cause or consent. It is not true that,
if the wife is not guilty of desertion, ergo the husband
is. There are many cases where neither party is guilty
of desertion. If a wife leaves her husband on account
of his cruel and barbarous treatment of her or his in-
dignities to her person, she may be entitled to an abso-
lute divorce, but she must allege such treatment or in-
dignities as her grounds, not desertion: Young v.
Young, 82 Pa. Superior Ct. 492. In this case, Young v.
Young, Judge Henderson very clearly and emphati-
cally demonstrates that this doctrine of constructive
desertion is not based on the divorce statute of 1815
and that, if sound, it would authorize divorces on facts
that would show, not desertion, but cruel and barbar-
ous treatment or indignities, and that consequently a
new cause of divorce would be introduced into the law.
This case has not been overruled, but in Krebs v. Krebs,
109 Pa. Superior Ct. 175, 176, the Superior Court ap-
proved a divorce where a husband commanded his wife
to leave and then abandoned their home and removed
the furniture, making a distinction from the Young
case by stating that the libellant in the Young case left
the home due to a series of unpleasant incidents. How-
ever, in the Krebs case the fact is that libellant did leave
the common habitation, whether the reason was good
or not, and even if it was properly decided it has a very

limited application. In Shaw v. Shaw, 72 Pa. Superior Ct. 191, and McDermott v. McDermott, 113 Pa. Superior Ct. 255, divorces were approved where the libellants left the common habitation and desertion was the cause alleged. In the Shaw case the Superior Court said (p. 195) :

"The circumstances under which the libellant . . . left the home of respondent's parents and went to that of her mother, did not of themselves involve a malicious desertion of the libellant by the respondent . . .", a conclusion that should have resulted in a dismissal of the libel, and then continued to say: ". . . but the course of conduct pursued by the appellant subsequently clearly demonstrates that he had resolved to make that temporary separation the excuse for refusing to resume marital relations with his wife and the refusal to subsequently contribute anything to her support or provide her with a home", as if failure to support a wife is a cause for divorce. In the McDermott case the husband was ordered out of the common habitation by the wife's relatives, he later returned to her but she refused to admit him into the habitation, and he later requested her to live with him and she refused to do so. The Superior Court said (p. 258) :

". . . he left the joint home under the compulsion of the wife and her relatives and his wife refused to permit him to return; that later she removed from their joint apartment and has since persistently refused to resume relations with him. Under these circumstances, a majority of the court is of the opinion that a cause of wilful and malicious desertion has been established."

This conclusion can be justified only on the theory that, when the husband was forced out of the home by the wife's relatives, his leaving was under duress and should not be deemed to be a leaving and that, when the wife subsequently left the apartment, it was still his habitation and, hence, she became the deserter. If

the doctrine of constructive desertion is to be held good, there is no reason why there should not be constructive cruel and barbarous treatment, constructive indignities and constructive adultery and that would open the door to a flood of cases where the grounds would be mental cruelty, incompatibility, and so forth. In Hartner v. Hartner, 75 Pa. Superior Ct. 342, 344, President Judge Orlady, who wrote the opinion in Howe v. Howe, supra, said: "But it is urged that this was a constructive desertion, *a term unknown to our law.*" (Italics supplied.)

Considering the doctrine of constructive desertion from another angle, it seems as if the courts have granted absolute divorces on the ground of desertion on facts which furnished cause for divorces from bed and board only, failing to make the proper distinction between the two remedies. Section 1 of the Act of February 26, 1817, 6 Sm. L. 405, provides:

". . . if any husband shall maliciously either abandon his family, or turn his wife out of doors . . . it shall be lawful for the Court of Common Pleas . . . to grant the wife a divorce from bed and board . . ." Section 11 of The Divorce Law of May 2, 1929, P. L. 1237, provides:

"Upon complaint, and due proof thereof, it shall be lawful for a wife to obtain a divorce from bed and board, whenever it shall be judged . . . that her husband has: (a) Maliciously abandoned his family; or (b) Maliciously turned her out of doors; or . . ." The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, provides: "Every law shall be construed, if possible, to give effect to all its provisions."

Section 62 provides: "Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things.

"Laws in pari materia shall be construed together, if possible, as one law." It may be said that these legal principles have always been in effect in Pennsylvania

and were in effect when the Divorce Acts of 1815 and 1817 were enacted. It has been held that a statute is to be read as a whole (Lansdowne Bank & Trust Company's Case, 323 Pa. 380) and that a statute must be construed as an integral part of the whole structure affected and not as a distinct and separate matter having an independent meaning of its own (Heaney v. Mauch Chunk Borough et al., 322 Pa. 487). Hence, judicious and well-advised interpretation of the provisions of section 10 of The Divorce Law of May 2, 1929, P. L. 1237, relating to wilful and malicious desertion, requires that, in ascertaining the meaning of the words used in the statute on this subject, the field of authority to grant divorces from bed and board on the ground of malicious abandonment of family or malicious turning of the wife out of doors under section 11 of the said act be taken into consideration, as an aid in interpretation of section 10. When a husband is guilty of cruel and barbarous treatment of his wife or indignities to her person or adultery, she has the option of applying for an absolute divorce under section 10 of the said act or for a divorce from bed and board under section 11, since the language employed in these two sections to describe these matrimonial offenses is almost identical; but when it comes to authorizing divorces for separation of the spouses the legislature has seen fit to use language in section 11 different from that used in section 10. In section 10 an absolute divorce to the innocent and injured spouse, who may be either the husband or the wife, is authorized when the other spouse "Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years", whereas in section 11 a divorce from bed and board to the wife is authorized when her husband shall have "Maliciously abandoned his family" or "Maliciously turned her out of doors". Thus, there is not only a difference in the

language used to describe the offenses, but there is also a difference in the two remedies. A divorce from bed and board is much more limited in its effect than an absolute divorce; it amounts to nothing more than a judicial separation with alimony and, in many respects, preserves the status quo ante. The employment of different language to describe and define the offenses is very significant and strongly indicates the legislative intention that the offenses of maliciously abandoning a family and maliciously turning a wife out of doors are not synonymous with wilful and malicious desertion by a husband. Where a wife is turned out of doors, she leaves the common habitation, even though she is forcibly ejected, and he remains there, but when a husband deserts his wife he leaves the common habitation and she remains there. This is a distinction which, in our opinion, no trick of logic or casuistry can eradicate. Turning out of doors is an occurrence, an event, like a battery, but desertion is a continuous condition and must last for two years at least. Actual abandonment of matrimonial cohabitation is a sine qua non of desertion, but it is not necessarily involved in malicious abandonment of family, since the word "family" includes not only the wife but also any children of the spouses living with them. The failure of the husband to maintain his wife is relevant to the question whether he abandoned his family or turned his wife out of doors, since the statute gives her a right to alimony, but the failure of a husband to support his wife is not a necessary element of his desertion of her, because the elements of desertion are the same whether it be the husband or the wife that is the alleged deserter. There is not one definition of desertion for a husband and another one for a wife; the definition of desertion given in Ingersoll v. Ingersoll, supra, is the same for both spouses. When the legislature authorized a divorce from bed and board to a wife for being maliciously abandoned by her husband or turned out of

doors by him, by implication it denied her an absolute divorce on the same grounds. In Semmens v. Semmens, 136 Pa. Superior Ct. 377, it is said that desertion under section 10 of The Divorce Law is not exactly the same as malicious abandonment under section 11 and that the latter is the "practical equivalent" of the former and "no less severe in its requirements," a statement that decides little. In Sowers' Appeal, 89 Pa. 173, a comprehensive statement is given as to the meaning of turning a wife out of doors, which is radically different from malicious desertion. We are of the opinion that constructive desertion of a wife is the same as turning her out of doors and that for it the only remedy of the wife is an application for a divorce from bed and board.

We believe that our conclusion that libellant in the pending case has failed to meet the burden of proof resting on her is fully supported by the cases of Magee v. Magee, 71 Pa. Superior Ct. 594, Bracken v. Bracken, 77 Pa. Superior Ct. 219, Price v. Price, 83 Pa. Superior Ct. 446, Knipe v. Knipe, 84 Pa. Superior Ct. 451, Loughney v. Loughney, 111 Pa. Superior Ct. 214, Moser v. Moser, 125 Pa. Superior Ct. 180, Lynch v. Lynch, 3 D. & C. 810, Strang v. Strang, 11 D. & C. 300, Barnes v. Barnes, 21 D. & C. 101, Pierce v. Pierce, 36 D. & C. 420, Ruggeri v. Ruggeri, 40 D. & C. 199, and Reno v. Reno, 47 D. & C. 551. Even if the doctrine of constructive desertion is valid, it would not apply to the pending case because libellant did not leave her husband's habitation by reason of his cruelty or threats or under dire compulsion or because her personal safety required her to leave.

The situation of libellant is unfortunate, but the law cannot grant her a divorce for that reason. A divorce proceeding in Pennsylvania is based on statute law, and the statute must be strictly followed, and no divorce can be granted unless the facts support one of the grounds for divorce set forth in the statute. Under

the law and the facts we believe this libellant has chosen the wrong remedy. She might have proceeded against her husband and procured an order of the court of quarter sessions against him for the support of herself and their child, or she might have applied for a divorce from bed and board and alimony. We do not say she would have been successful in either but those remedies would have been more applicable to the facts.

### Order

And now, October 23, 1943, the recommendations of the master are disapproved, a decree of divorce from the bond of matrimony is refused, and the libel is dismissed.